STROUD, Judge.
 

 *295
 
 Plaintiff Curtis Lambert ("plaintiff") appeals from the trial court's order of dismissal in favor of defendant Town of Sylva ("defendant"). At the close of plaintiff's evidence in a jury trial of the three claims in the complaint, the trial court granted a directed verdict for defendant on all claims. Plaintiff appealed, and for the reasons that follow, we reverse and remand for a new trial.
 

 *190
 
 I. Facts
 

 Because this case turns on legal issues, we will present only a brief summary of the facts based upon plaintiff's evidence. Plaintiff was employed by defendant as a police officer for the Town of Sylva. He was supervised by the Chief of Police Davis Woodard; Chief Woodard was under the supervision of the Town Manager, Paige Roberson Dowling. On 17 February 2014, plaintiff filed to run for Jackson County Sheriff, as a Republican. Plaintiff claims that Chief Woodard ridiculed him for running for sheriff and took other adverse actions against him for this reason. On 3 March 2014, Chief Woodard called plaintiff in to meet with him, the Town Manager, and an assistant chief and then demanded that plaintiff resign his position as a police officer. He refused, so Chief Woodard fired him. When he asked why, Chief Woodard and the Town Manager claimed to have received complaints about him, although plaintiff had never been informed of any complaints. Plaintiff then inquired about his personnel file and found it contained no complaints, reprimands, or counseling notifications, other than one undated and unsigned memo purportedly from a detective regarding a traffic checkpoint conducted in November 2013. Plaintiff sought to appeal his termination with the Town of Sylva, but the Town Manager affirmed the termination and told him that the decision was final.
 

 Despite the absence of any complaints or disciplinary action in his personnel file, after plaintiff applied to receive unemployment benefits, defendant provided information to the North Carolina Employment Security Commission stating that plaintiff was terminated for excessive absenteeism and claimed that he had been warned about this, although his personnel file included no such warnings and showed that plaintiff's only absences had been for illness and the birth of his child-all approved by defendant under the Town's usual policies for sick leave.
 

 Plaintiff filed a complaint against defendant on 2 March 2015, alleging claims under
 
 42 U.S.C. § 1983
 
 based upon defendant's violations of his state and federal constitutional rights to free speech and association
 
 *296
 
 and for his wrongful termination in violation of North Carolina public policy as expressed in N.C. Gen. Stat. § 160A-169, since he was fired based upon his political activity or beliefs. Plaintiff also alleged that defendant had purchased liability insurance coverage for employment cases and had waived any defense of "sovereign immunity to the extent of coverage under the policy."
 

 On 7 April 2015, defendant filed its answer, which admitted a few allegations of the complaint and denied the others. The answer alleged that plaintiff's employment was at will and could be terminated at the will of the defendant, without regard to his performance. But the answer is most notable here for the total absence of any affirmative defenses, particularly any claim of any sort of governmental immunity. According to the record before this Court, defendant filed no motion to dismiss and never moved for summary judgment. The complaint, defendant's acceptance of service, and answer were the only documents filed in the case until the jury trial started.
 

 Plaintiff's claims came on for a jury trial on 23 May 2016, with the jury impaneled on 24 May 2016. On 25 May 2016, at the close of plaintiff's evidence, defendant filed a written motion for directed verdict "pursuant to Rule 50, Rule 12(b)(6) and Rule 12(b)(7) of the North Carolina Rules of Civil Procedure." Defendant made four arguments for directed verdict, which we will summarize briefly:
 

 (1) The doctrine of respondeat superior does not apply to plaintiff's claims under
 
 42 U.S.C. § 1983
 
 or termination in violation of public policy, because "the Town itself must have a custom or policy that is in violation of the law" and the Town had no policy that a "Town employee could not run for political office."
 

 (2) Under Rule 12(b)(6), plaintiff's complaint failed to state a claim upon which relief could be granted due to the lack of a "pattern, practice, custom or usage" in violation of his constitutional rights.
 

 (3) Under Rule 12(b)(7), "Town Officials" made the decisions plaintiff alleges are in violation of his rights and they were not made parties.
 

 *191
 
 (4) Plaintiff's evidence is too "speculative" to "rebut the Employment at Will presumption."
 

 Once again, defendant did not mention any claim of governmental immunity in its written motion for directed verdict or in argument to the trial court. The trial court granted defendant's motion for directed verdict. We have had difficulty discerning why, although the trial court's order essentially tracks defendant's motion. The order says:
 

 *297
 
 [I]t appearing that after the Plaintiff had presented all of Plaintiff's evidence to the jury and Plaintiff had rested, the Defendant moved to dismiss the Plaintiff's case. Based upon the pleadings, facts and arguments of counsel, viewed in the light most favorable to the Plaintiff, the Court finds that Plaintiff has shown no lawful claim, and that Defendant's motion should be granted pursuant Rules 12(b) 6, 12(b)7 and Rule 50 of the North Carolina Rules of Civil Procedure.
 

 In seeking to understand this order, we have also considered the trial court's comments to the jury upon granting directed verdict. He stated:
 

 Members of the jury, I appreciate your attention to this case so far, but at the end of the plaintiff's evidence I've dismissed the lawsuit, so there will be nothing for you to hear. I want to explain why I did that because I-well, you're probably wondering about it and you're entitled to an explanation.
 

 He first addressed the § 1983 claims:
 

 [For] the Town of Sylva commissioners-to be responsible for what their employees do that the plaintiff alleges was wrong, the commissioners either had to have a custom or policy that allowed it or directed it, they had to know it was happening-these are alternatives-or they had to know it was happening and did nothing about it, maybe a reckless indifference type standard, or perhaps they failed to adequately train their employees and that's why it was happening, but just because a municipal employee allegedly violated someone's rights under that federal statute does not make the town liable, and I think you understand what I'm saying.
 

 I've heard-perhaps there's been some testimony about some communication from a commissioner, but I didn't hear any evidence that the commissioners were the moving force behind any of this.
 

 Now maybe employees, if you believe the plaintiff's evidence, were, but not the commissioners themselves, and that's why I dismissed the federal claims.
 

 *298
 
 He then addressed the claim for wrongful discharge:
 

 Well, North Carolina law makes it clear you can't fire someone because of political things they do when they're not at work; that's wrong.
 

 But you've also heard of sovereign immunity. You've heard of the cases where a-for example, a state employee was driving a truck during his business and he hit somebody and hurts them. So that person says, "I'm going to sue the state." And perhaps you've heard about those cases where that lawsuit was thrown out because the judge says, "You cannot sue the state without their permission."
 

 I remember I read some of those cases and I thought, well, that's kind of unfair. Well, it depends on who hits you, who runs over you, whether you get money back or not for your damages. And there's an exception for that. If the state or municipality has purchased liability insurance, then those lawsuits can proceed. But there's been no evidence about liability insurance in this case.
 

 So that doctrine goes back to the common law and the law concerning the King of England. You couldn't sue the king without his permission. And there's all kinds of exceptions. I know you want me to go into them, but I won't.
 

 Plaintiff timely filed a notice of appeal from the trial court's order granting directed verdict.
 

 II. Analysis
 

 a. Standard of review
 

 The order on appeal was entered after presentation of the plaintiff's evidence at trial and is based upon Rule 50, despite its reference to Rules (12)(b)(6) and (7), so we
 
 *192
 
 must consider all of the evidence presented at trial in the light most favorable to plaintiff.
 

 The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, the question is whether there is sufficient evidence
 
 *299
 
 to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury.
 

 Davis v. Dennis Lilly Co.
 
 ,
 
 330 N.C. 314
 
 , 322-23,
 
 411 S.E.2d 133
 
 , 138 (1991) (citations omitted).
 

 In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.
 

 Turner v. Duke University
 
 ,
 
 325 N.C. 152
 
 , 158,
 
 381 S.E.2d 706
 
 , 710 (1989). If the plaintiff has presented "more than a scintilla of evidence" to support each element of a claim, the trial court should deny directed verdict.
 
 Bryant v. Thalhimer Bros., Inc.,
 

 113 N.C. App. 1
 
 , 6,
 
 437 S.E.2d 519
 
 , 522 (1993). The trial court's ruling presents a question of law which we review
 
 de novo
 
 and "[t]his Court's review is limited to those grounds asserted by the moving party at the trial level."
 
 Maxwell v. Michael P. Doyle, Inc.
 
 ,
 
 164 N.C. App. 319
 
 , 323,
 
 595 S.E.2d 759
 
 , 761-62 (2004) (citation and quotation marks omitted).
 

 Our Supreme Court has noted that "where the question of granting a directed verdict is a close one, ... the better practice is for the trial court to reserve its decision on the motion and allow the case to be submitted to the jury."
 
 Turner
 
 ,
 
 325 N.C. at 158
 
 ,
 
 381 S.E.2d at 710
 
 . If the case is submitted to the jury and the jury should return a verdict for the plaintiff, reserving the ruling on the motion for directed verdict and then granting a judgment notwithstanding the verdict also has the advantage of avoiding the need for another trial, should the directed verdict be reversed on appeal.
 
 See
 
 N.C. R. Civ. P. Rule 50 Comment,
 
 Comment to this Rule as Originally Enacted
 
 ("Under [ Rule 50 ], whenever a motion for a directed verdict made at the close of all the evidence is not granted, it will be deemed that the judge submitted the case to the jury having reserved for later determination the legal question raised by the motion. Thus, if there is a verdict for the nonmovant or if for some reason a verdict is not returned, the judge can reconsider the sufficiency of the evidence and, if convinced that it is insufficient, can grant the motion. If, on appeal it should prove that the judge was correct, that is, that he properly granted the motion, then the appellate court can affirm and, in appropriate cases, order judgment entered for the movant. On the other hand, if it should
 
 *300
 
 prove that the trial judge improperly granted the motion, the appellate court is not restricted to granting a new trial, as under the prior practice, but can order judgment entered on the verdict.").
 

 b. Procedural posture
 

 As we noted above, we need not dwell on details of the facts as presented at trial. Viewing the evidence in the light most favorable to plaintiff, he has presented "more than a scintilla" of evidence to support his claim he was fired because he was running for sheriff as a Republican.
 
 Bryant,
 

 113 N.C. App. at 6
 
 ,
 
 437 S.E.2d at 522
 
 . His evidence also shows that the Chief's decision was supported by the Town Manager, so her review of the termination was just a "rubber stamping" of the Chief's decision, and that the defendant did not permit plaintiff to appeal this decision. Defendant certainly claims otherwise, but again, we must take plaintiff's evidence as true and must draw all reasonable inferences in his favor.
 
 See
 

 Davis
 
 ,
 
 330 N.C. at 322
 
 ,
 
 411 S.E.2d at 138
 
 .
 

 In addition, this case comes to us in a very unusual procedural posture, particularly for the legal issues involved. Although there are other cases addressing wrongful termination and
 
 42 U.S.C. § 1983
 
 claims, we cannot find any other case in North Carolina in which a directed verdict has been granted for a defendant,
 
 *193
 
 primarily based upon governmental immunity, where the defendant has neither pled nor argued governmental immunity as a defense. Moreover, while Rule 12(b)(6) was noted in defendant's motion and the order granting directed verdict, a motion to dismiss under Rule 12(b)(6) considers whether the plaintiff's complaint has stated a claim upon which relief may be granted, and this case had already proceeded to trial. Nevertheless, with those caveats, we will address the arguments on appeal.
 

 c. Governmental Immunity
 

 We will first address the trial court's ex mero motu dismissal of plaintiff's state law claim for wrongful discharge based upon governmental immunity.
 
 [1]
 
 Defendant did not plead governmental immunity as an affirmative defense and did not move to dismiss on this basis. In all fairness to defendant, defendant did not seek to defend the trial court's ruling on governmental immunity in its brief before this Court either. According to the trial court's rendition of the reasons for dismissal and
 
 *301
 
 reference in the order to Rule(12)(b)(6)
 
 [2]
 
 , the trial court relied solely or primarily on governmental immunity for the dismissal of plaintiff's wrongful termination claim under state law, so we must address it.
 

 Governmental immunity is an affirmative defense, and like other forms of immunity, must be plead by the defendant.
 

 First, as a complete bar to liability, governmental immunity constitutes an affirmative defense. As a defense, governmental immunity cannot, by definition, be raised until there is a lawsuit to defend against. Affirmative defenses are raised by a party's responsive pleading.
 

 Clayton v. Branson
 
 ,
 
 170 N.C. App. 438
 
 , 449,
 
 613 S.E.2d 259
 
 , 268 (2005) (citations omitted). Where a defendant does not raise the affirmative defense of governmental immunity, normally by a motion to dismiss or answer, it is waived.
 
 See
 

 Burwell v. Giant Genie Corp.
 
 ,
 
 115 N.C. App. 680
 
 , 684-85,
 
 446 S.E.2d 126
 
 , 129 (1994) ("Qualified immunity is an affirmative defense that must be pleaded by the defendant. Ordinarily, the failure to plead an affirmative defense results in a waiver unless the parties agree to try the issue by express or implied consent. ... Where a defendant does not raise an affirmative defense in his pleadings or in the trial, he cannot present it on appeal." (Citations and quotation marks omitted) ).
 

 Even if defendant had a potential affirmative defense of governmental immunity,
 
 defendant
 
 would have had to raise this defense or it is waived; the trial court cannot raise it for the defendant. And as defendant tacitly acknowledges and plaintiff notes, his
 
 42 U.S.C. § 1983
 
 claim under the United States Constitution would not be barred by governmental immunity absent an adequate state remedy.
 
 See
 

 Craig v. New Hanover Cnty. Bd. of Educ.
 
 ,
 
 363 N.C. 334
 
 , 338,
 
 678 S.E.2d 351
 
 , 354 (2009) ("This Court could hardly have been clearer in its holding in
 
 Corum
 
 [
 
 v. University of North Carolina
 
 ,
 
 330 N.C. 761
 
 ,
 
 413 S.E.2d 276
 
 (1992) ]: '[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution.'
 
 Id
 
 . at 782,
 
 413 S.E.2d at 289
 
 ."). Whether
 
 *302
 
 defendant had waived immunity for this type of claim by purchasing liability insurance coverage is irrelevant, since for a constitutional claim of this type, defendant would have had no immunity either way.
 

 d. Violation of constitutional rights under
 
 42 U.S.C. § 1983
 

 Although we have determined that the trial court erred to the extent it dismissed
 
 *194
 
 plaintiff's claims based on governmental immunity, both the order and the trial court's explanation of its ruling included another reason for dismissal, so we must consider if another legal basis could support a directed verdict order. The trial court's order did not address the sufficiency of the evidence, but based upon its statements to the jury, it appears that the trial court did
 
 not
 
 find the evidence to be insufficient to support plaintiff's claim. The trial court stated to the jury, "if we would have gone forward,
 
 I don't know what you would have decided
 
 , whether you would have decided that the firing was in response to [plaintiff] filing for sheriff, or maybe you wouldn't, I don't know. So I'm not basing my decision on whether someone was treated correctly or incorrectly." This statement implies that plaintiff presented sufficient evidence that the jury could potentially have ruled in his favor, if they found his evidence to be credible. The trial court also noted that the evidence showed that town employees had taken certain actions, but "not the commissioners themselves, and that's why I dismissed the federal claims." The trial court granted directed verdict based upon the defendant's argument that the doctrine of respondeat superior does not apply to plaintiff's claims under
 
 42 U.S.C. § 1983
 
 or termination in violation of public policy, because "the Town itself must have a custom or policy that is in violation of the law" and no evidence was presented that the Town in this case had a policy that a "Town employee could not run for political office." But plaintiff did not need to prove that the Town had a policy that Town employees could not run for political office. Plaintiff's claim was based on his allegation and evidence that Chief Woodard was the official with final policy-making authority as to hiring or firing in the police department, and that the Town Manager also concurred in the allegedly unconstitutional firing.
 

 The United States Supreme Court explained this distinction in
 
 Pembaur v. City of Cincinnati
 
 ,
 
 475 U.S. 469
 
 ,
 
 106 S.Ct. 1292
 
 ,
 
 89 L.Ed.2d 452
 
 (1986), with an analysis of a prior United States Supreme Court case,
 
 Monell v. Dept. of Soc. Serv. of City of N.Y.
 
 ,
 
 436 U.S. 658
 
 ,
 
 98 S.Ct. 2018
 
 ,
 
 56 L.Ed.2d 611
 
 (1978) :
 

 Monell
 
 is a case about responsibility. In the first part of the opinion, we held that local government units could
 
 *303
 
 be made liable under § 1983 for deprivations of federal rights, overruling a contrary holding in
 
 Monroe v. Pape
 
 ,
 
 365 U.S. 167
 
 ,
 
 81 S.Ct. 473
 
 ,
 
 5 L.Ed.2d 492
 
 (1961). In the second part of the opinion, we recognized a limitation on this liability and concluded that a municipality cannot be made liable by application of the doctrine of
 
 respondeat superior
 
 .
 
 See
 

 Monell
 
 ,
 
 436 U.S., at 691
 
 ,
 
 98 S.Ct. at 2036
 
 . In part, this conclusion rested upon the language of § 1983, which imposes liability only on a person who "subjects, or causes to be subjected," any individual to a deprivation of federal rights; we noted that this language "cannot easily be read to impose liability vicariously on government bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."
 

 Id.
 

 , at 692,
 
 98 S.Ct. at 2036
 
 ....
 

 The conclusion that tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's "official policy" is contained in this discussion. The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.
 
 Monell
 
 reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"-that is, acts which the municipality has officially sanctioned or ordered.
 

 With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.
 
 No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body-whether or not that body had taken similar action in the past or intended to do so in the future-because even a single decision by such a body unquestionably constitutes an act of official government policy. ...
 
 Monell's language
 

 *195
 

 makes clear that it expressly envisioned other officials "whose acts or edicts may fairly be said to represent official policy," Monell, supra,
 
 436 U.S., at 694
 
 ,
 
 98 S.Ct. at 2037-2038
 
 , and whose decisions therefore may give rise to municipal liability under § 1983.
 

 *304
 

 Indeed, any other conclusion would be inconsistent with the principles underlying § 1983
 
 .... However, ... a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.
 

 ....
 

 Having said this much, we hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on the exercise of that discretion.
 
 See, e.g.,
 

 Oklahoma City v. Tuttle
 
 , 471 U.S. [808], at 822-824, 105 S.Ct. [2427] at 2435-2436 [
 
 85 L.Ed.2d 791
 
 (1985) ]. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.
 

 Pembaur
 
 ,
 
 475 U.S. at 478-83
 
 ,
 
 106 S.Ct. at 1297-1300
 
 (emphasis added).
 

 According to plaintiff's evidence, defendant provided no process for its Commissioners to review the decisions of the Chief or Town Manager. Essentially, defendant's position is that even if its chief of police and town manager knowingly violated the constitutional rights of an employee, defendant can insulate itself from responsibility by having a policy it leaves these final decisions to these employees and it will not review any appeal by the wronged employee. This is not the law as established by the United States Supreme Court.
 

 *305
 
 When, however, an allegedly unconstitutional decision is made by an official with "final policy making authority," then the municipality may be held liable for that official's decision, so long as the decision was made by "the official or officials responsible under state law for making policy in
 
 that area
 
 of the city's business."
 
 City of St. Louis v. Praprotnik
 
 ,
 
 485 U.S. 112
 
 , 123,
 
 108 S.Ct. 915
 
 ,
 
 99 L.Ed.2d 107
 
 (1988). Furthermore, as the Supreme Court explained in
 
 Praprotnik
 
 , the hallmark of municipal liability is the
 
 finality
 
 of the decision being reviewed: When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with
 
 their
 
 policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.
 
 Id
 
 . at 127,
 
 108 S.Ct. 915
 
 . In other words, even if the allegedly unconstitutional decision is initially made by a subordinate official, when that decision is appealed to and affirmed by an official with final authority over a matter, the municipality may be held liable for this affirmance.
 

 Arendale v. City of Memphis
 
 ,
 
 519 F.3d 587
 
 , 601-02 (6th Cir. 2008).
 

 We realize that defendant's evidence may present a very different picture of defendant's policies and procedures governing hiring and termination of employees, but unfortunately, since this case was dismissed after plaintiff's evidence, we do not have the benefit
 
 *196
 
 of that evidence. We must take the plaintiff's evidence as true and draw every reasonable inference in plaintiff's favor, and if we do so, plaintiff presented sufficient evidence to survive the motion for directed verdict on his claims under
 
 42 U.S.C. § 1983
 
 .
 

 e. Failure to Join Necessary Party
 

 The trial court also noted that its order was based upon Rule 12(b)(7) of the Rules of Civil Procedure. Rule 12(b)(7) provides that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, crossclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the
 
 *306
 
 following defenses may at the option of the pleader be made by motion: (7) Failure to join a necessary party." Just as for Rule 12(b)(6), this is a rule normally invoked at the very beginning of a lawsuit, at the pleading stage, and defendant never requested joinder of any other parties. But even though defendant never requested joinder of any other parties, the trial court has the authority, and even the duty, to order joinder
 
 ex mero motu
 
 .
 
 See
 

 Morganton v. Hutton & Bourbonnais Co.
 
 ,
 
 247 N.C. 666
 
 , 668,
 
 101 S.E.2d 679
 
 , 682 (1958) ("Whenever, as here, a fatal defect of parties is disclosed, the Court should refuse to deal with the merits of the case until the absent parties are brought into the action, and in the absence of a proper motion by a competent person, the defect should be corrected by
 
 ex mero motu
 
 ruling of the Court.").
 

 Since joinder of necessary parties is the only issue addressed by Rule 12(b)(7), and the order cites this rule, we assume that the trial court determined that there was some other person who was a necessary party.
 

 A person is a necessary party to an action when he is so vitally interested in the controversy involved in the action that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence as a party. When a complete determination of the matter cannot be had without the presence of other parties, the court must cause them to be brought in.
 

 Booker v. Everhart
 
 ,
 
 294 N.C. 146
 
 , 156,
 
 240 S.E.2d 360
 
 , 365-66 (1978) (citations omitted).
 

 We cannot determine from the transcript, record, or order whom the trial court believed to be a necessary party or why, even if they may be proper parties, they would be
 
 necessary
 
 , so we cannot analyze whether they would be necessary parties. We express no opinion on whether any parties should be joined on remand. But in any event, if the trial court determined a necessary party had not been joined, dismissal of plaintiff's case with prejudice would not be the appropriate result. Instead, the trial court should have continued the trial and ordered that any necessary party be joined. "[D]ismissal under Rule 12(b)(7) is proper only when the defect cannot be cured, and the court ordinarily should order a continuance for the absent party to be brought into the action and plead."
 
 Howell v. Fisher
 
 ,
 
 49 N.C. App. 488
 
 , 491,
 
 272 S.E.2d 19
 
 , 22 (1980).
 

 There is nothing in the record to indicate that "the defect" (if any) could not be cured, since we do not know who the alleged necessary party or parties are. And if a necessary party is not subject to the court's
 
 *307
 
 jurisdiction, dismissal with prejudice still would not be the appropriate result. Even if a party ordered to be joined as a necessary party is not subject to the court's jurisdiction, the
 

 dismissal for failure to join a necessary party is not a dismissal on the merits and may not be with prejudice. The same is true, of course, where the party ordered joined is not a necessary party but is a proper party which the court, in its discretion, decides should be joined. The following language relating to Rule 12(b)(7) of the Federal Rules of Civil Procedure is applicable also to our Rule 12(b)(7) : When faced with a motion under Rule 12(b)(7), the court will decide if the absent party should be joined as a party. If it decides in the affirmative, the court will order him brought into the action. However, if the absentee cannot be joined, the court must then determine, by balancing the guiding factors set forth in Rule 19(b), whether to proceed without him or to dismiss the action. A dismissal under Rule 12(b)(7) is not
 
 *197
 
 considered to be on the merits and is without prejudice.
 

 Carding Developments v. Gunter & Cooke
 
 ,
 
 12 N.C. App. 448
 
 , 453-54,
 
 183 S.E.2d 834
 
 , 838 (1971) (citations, quotation marks, and ellipses omitted).
 

 To the extent that the trial court dismissed plaintiff's claims based upon failure to join a necessary party, it erred, and we must reverse the order.
 

 III. Conclusion
 

 Because the trial court granted directed verdict based upon a misapprehension of the law regarding plaintiff's claims under
 
 42 U.S.C. § 1983
 
 and erred in dismissing any claims based upon governmental immunity since it was never pled by defendant, we reverse the order granting directed verdict and remand for a new trial on all claims. On remand, before proceeding with another trial, the trial court should allow the parties to be heard on whether any necessary or proper parties should be joined, and the trial court should enter any appropriate orders regarding those parties so all parties may be joined before the matter is set again for trial. But again, we express no opinion on whether any necessary or proper parties should be joined; we address this issue only because the trial court's order addressed it and to provide procedural guidance on remand.
 

 REVERSED AND REMANDED.
 

 Judges ELMORE and TYSON concur.
 

 [1]
 

 It is not clear if the trial court relied upon governmental immunity to dismiss the other claims, but to the extent that the trial court's rendition and order could be construed this way, the same analysis would apply.
 

 [2]
 

 Although governmental immunity is normally raised under either Rule12(b)(1) or (2), it can be raised under Rule 12(b)(6) as well.
 
 See, e.g.,
 

 Meherrin Indian Tribe v. Lewis
 
 ,
 
 197 N.C. App. 380
 
 , 385,
 
 677 S.E.2d 203
 
 , 207 (2009). In
 
 Meherrin
 
 , this Court addressed the defense of sovereign immunity under all three subsections of Rule 12, since the distinction was important in that case which involved an interlocutory appeal from an order denying the defendants' motion to dismiss based on sovereign immunity.
 
 Id
 
 . at 384-85,
 
 677 S.E.2d at 207
 
 . The distinction is not important here, since the trial court granted the motion to dismiss and entered a final order.