IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-927

Filed 1 October 2025

Rowan County, Nos. 20CRS054385-790, 22CRS000929-790, 24CRS000246-790

STATE OF NORTH CAROLINA

v.

BRIAN BRANHAM, Defendant.

Appeal by Defendant from judgments entered 23 February 2024 and 22 April 2024 by Judge Michael S. Adkins in Rowan County Superior Court. Heard in the Court of Appeals 20 March 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Ronnie K. Clark, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender John F. Carella, for Defendant–Appellant.*

MURRY, Judge.

Brian Branham (Defendant) appeals the trial court's denial of his motion to dismiss for immunity under N.C.G.S. § 90-96.2(c) and its acceptance of his guilty plea. For the following reasons, this Court holds that the trial court did not err by denying the motion.

## I. Background

On 30 November 2020, 911 dispatched the Rowan County Sheriff's Office to assist an unconscious Defendant behind the wheel of a running vehicle. The 911 caller knocked on his window without a response and left the scene. Upon arrival, Alcohol

Law Enforcement Agent Jerry Dean observed Defendant still unconscious in the car. He knocked on Defendant's car window to wake him up. As Defendant exited the vehicle, Agent Dean observed a needle and a plastic baggie filled with heroin on the driver's seat. Lieutenant Brian Barkley, who arrived soon after, observed Defendant standing outside of his car. Lieutenant Barkley also saw the same paraphernalia and drugs in plain view. After paramedics arrived, Lieutenant Barkley asked Defendant if he had any medical problems or needed medical assistance. Defendant responded, "No."

On 19 April 2021, a grand jury indicted Defendant for felony possession of a Schedule I controlled substance and related drug paraphernalia. On 23 May 2023, Defendant moved to dismiss the prosecution through a "motion to determine immunity," (motion) arguing that N.C.G.S. § 90-96.2 (Good Samaritan Law[1]) granted him immunity from prosecution in these circumstances. On 19 February 2024, the trial court heard the motion. At the hearing, Defendant testified to intravenously injecting fentanyl and losing consciousness. Although no witness testified to administering him medical treatment, Defendant believed that he received Narcan[2] because he "came back and vomited." Defendant testified to "refus[ing] to go to the hospital." Lieutenant Barkley and Agent Dean testified to Defendant's refusal of

---

[1]    *See Luke* 10:25–37 (parable of Good Samaritan).

[2]    "Narcan" is the brand name for the medication naloxone which can reverse an opioid overdose.

medical care and his concurrent appearance inconsistent with a drug overdose. Neither observed Defendant receiving any medical care for a drug-related overdose. Further, Lieutenant Barkley stated that he did not observe any evidence of treatment, such as "medical devices, medicine, or waste from treatment." On 23 February 2024, the trial court denied Defendant's motion for its "fail[ing] to satisfy the statutory requirements to qualify for immunity from prosecution under [N.C.]G.S. § 90-96.2."

On 22 April 2024, Defendant entered a guilty plea to felony possession of a Schedule I controlled substance, possession of drug paraphernalia, failure to appear, and habitual felon status. Defendant's plea arrangement purported to "preserve[ ] the issue of denial of [hi]s motion for appeal" and his "inten[t] to appeal the final judgment of conviction in 20CRS54385 and 22CRS929 pursuant to N.C.[G.S. §] 15A-979." At Defendant's plea hearing, the trial court's plea colloquy included:

> THE COURT: Do you understand that following a plea of guilty there are limitations on your right to appeal?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: The prosecutor, your lawyer and you inform the Court that the following are all the terms and conditions of your plea: That you preserve the right—or the issue of the denial of your pretrial motion for appeal and that you intend to appeal the final judgment of conviction in 20CRS54385 and 22CRS929 pursuant to General Statutes 15A-979?
>
> DEFENDANT: Yes, sir.

(Quotation modified.) After the trial court accepted his plea, Defendant gave oral notice of appeal, at which point the trial court "note[d] his appeal in this case pursuant to his transcript with respect to appealing the issue" of the trial court's "ruling on his pretrial motion."

## II.    Procedural Jurisdiction

Defendant argues his plea agreement was "not the product of informed choice, violated North Carolina law, and was improperly accepted" because it did not preserve in law the right to appeal the denial of his motion. As a threshold matter, Defendant must show a statutory right to appeal from his guilty plea. *State v. Pimenthal*, 153 N.C. App. 69, 72 (2002). A defendant generally waives any right to appeal a conviction if he pleads guilty. *See* N.C.G.S. § 15A-1444(a1) (2023). Here, Defendant recognizes the denial of his pretrial motion for immunity under N.C.G.S. § 90-96.2 as not being an issue for appellate review as a matter of right and instead petitions this Court for a writ of certiorari (PWC). *See* N.C. R. App. P. 21(a)(1) [hereinafter Rule 21]. In his PWC, Defendant asks this Court to review (1) whether his plea was knowing and voluntary and (2) whether the trial court erred by denying his pretrial motion for immunity under N.C.G.S. § 90-96.2.

### A.  *State v. Demaio*

Defendant invokes *State v. Demaio*, 216 N.C. App. 558 (2011), to argue that his plea was not a product of informed choice, and as a result, his plea was improperly accepted by the trial court. In *Demaio*, the defendant's plea agreement purported to

- 4 -

"preserve[ ] [his] right to appeal the denial[s]" of two pre-trial motions for which he had no statutory right. *Id.* at 561. After the defendant petitioned this Court, it reversed and remanded the trial court's judgment for rehearing. *Id.* at 565. The *Demaio* Court reasoned that "the plea agreement violated the law" because the defendant had no discernable right to appeal from any particular statute, Rule 21, or the procedural outline of *State v. Bolinger*, 320 N.C. 596, 601 (1987). *Id.* Given those restraints, the Court ultimately held that:

> If a defendant does not have an appeal as of right and we are *not permitted* under Rule 21 or *Bolinger* to grant certiorari on issues the defendant was promised would be preserved for appeal, then the plea agreement violates the law.

*Id.* at 565 (emphasis added). *Demaio* syllogized the conditional legality of defendant plea agreements: *if* a defendant's plea falls outside *Demaio's* jurisdictional proscription, *then* it violates the law. *Id.* at 565. Only three authorities "permitted" this Court to grant appellate review: (1) statutory right, (2) Rule 21, or (3) *Bolinger's* challenge to a procedurally faulty guilty plea itself. *See Bolinger*, 320 N.C. at 601 (extending guilty-plea defendant's appealable issues to procedural challenge not at issue here).

Our Supreme Court later abrogated this proposition as an undue restraint on granting certiorari. Our Supreme Court considered the jurisdictional limits of our discretionary authority to grant certiorari in *State v. Ledbetter*, 371 N.C. 192 (2018). It held that:

> Absent specific statutory language limiting its jurisdiction, the Court maintains its discretionary authority to issue the prerogative writs, including certiorari. Rule 21 does not prevent it from issuing writs or have *any* bearing upon a decision to do so.

*Id.* at 197 (citation modified).

In so holding, it clarified Rule 21's purported jurisdictional limits as a gratuitous abdication of discretion. *See id.* at 196. ("By concluding it is procedurally barred from exercising its discretionary authority to assert jurisdiction . . . the Court of Appeals has, as a practical matter, set its own limitations on its jurisdiction . . . ."). The Supreme Court has since clarified that Rule 21 merely proceduralizes an inherent judicial power "that *litigants* must use to petition for a writ of certiorari"; it does not intrinsically "limit the Court of Appeals itself." *In re R.A.F.*, 384 N.C. 505, 507 (2023); *see* Rule 1(c). Our discretionary power to issue writs is instead "provided by statute or rule of the Supreme Court, or, *in the absence* [*there*]*of* . . . , according to . . . the common law." N.C.G.S. § 7A-32(c); *accord Womble v. Moncure Mill & Gin Co.*, 194 N.C. 577, 579 (1927) ("Certiorari is a discretionary writ[ ] . . . issued only for good or sufficient cause . . . ."). As a result, we may "broad[ly]" issue writs "in aid of [our] own jurisdiction" "unless a more specific statute revokes or limits [them]." *R.A.F.*, 384 N.C. at 507; *e.g.*, N.C.G.S. § 7A-32(c).

In the case *sub judice*, Defendant argues he cannot receive "the benefit of his bargain" because the negotiated condition "explicitly invoked a right to appeal that did not exist." He argues there is "no way" for him to achieve this benefit under

*Demaio* but also asks us to provide it under our broader Rule 21 conception. *Ledbetter*, 371 N.C. 195–97. Defendant would have us sever *Demaio*'s holding from its Rule 21 framework by adopting its conclusion without its rationale. In other words, Defendant wants it both ways.

The *Demaio* Court vacated the defendant's plea on the flawed belief that it lacked a jurisdictional mechanism to bring about the plea agreement's end. *Demaio*, 216 N.C. at 565. It reasoned that, because it could not review the defendant's motion as promised, it had no choice but to "place [the d]efendant back in the position he was before he struck his bargain." *Id.* at 565. *Demaio*'s conclusion is inextricable from our former Rule 21 interpretation. To hold otherwise would cherry-pick precedent at best and flirt with logical impossibility at worst. Thus, this Court holds that Defendant cannot receive the benefit of his bargain under *Ledbetter* while arguing its impossibility under *Demaio*.

## B. *Cryan v. Nat'l Council*

Given the preceding analysis, we now turn to Defendant's PWC. Recognizing our "broad jurisdiction to issue writs of certiorari unless a more specific statute revokes or limits" it, *R.A.F.*, 384 N.C. at 507 (quoting *Ledbetter*, 371 N.C. at 195)), our Supreme Court "establishe[d] a two-factor test to assess whether certiorari review is appropriate." *Cryan v. Nat'l Council of YMCAs of U.S.*, 384 N.C. 569 (2023). The appellant must show (1) either "merit or that error was probably committed below," and (2) that "extraordinary circumstances" "justify" appellate review. *Id.* at 572–53.

(first quoting *State v. Grundler*, 251 N.C. 177, 189 (1959); and then quoting *Moore v. Moody*, 304 N.C. 719, 720 (1982)). "Ultimately, the decision to issue a writ of certiorari rests in the sound discretion of the presiding court." *Id.*

Applying *Cryan*, Defendant shows merit by demonstrating that he has yet to receive the benefit of his plea bargain. *Grundler*, 251 N.C. at 189; *see In re Snelgrove*, 208 N.C. 670, 672 (1935) (interpreting "merit" as "reasonable grounds for asking that the case be brought up and reviewed on appeal."). Because we *may* grant certiorari on the issue that "[D]efendant was promised would be preserved for appeal," we *can* provide Defendant the benefit of his bargain. *Demaio*, 216 N.C. at 565. Defendant has also shown extraordinary circumstances by highlighting the lack of case law analyzing immunity motions under N.C.G.S. § 90-96.2. *See Cryan*, 384 N.C. at 573 ("extraordinary circumstances" include "a relatively new statutory scheme which has limited jurisprudence surrounding it"). And in the interest of judicial economy, resolving Defendant's appeal ensures he receives the benefit of his bargain and eliminates the need for further proceedings. Therefore, this Court grants his PWC. We do not establish a per se rule that all unappealable motions *must* be granted appellate review; we simply exercise our discretion to address the merits of Defendant's appeal in light of the compelling and specific circumstances above.[3]

---

[3] Unlike the dissent suggests, we do not create a right to appeal immunity motions. We simply apply existing appellate rules to address the merits of Defendant's argument and grant him the benefit of his bargain.

## III.   Substantive Analysis

Upon review of Defendant's motion, this Court holds that the trial court did not erroneously interpret the Good Samaritan Law and affirms the trial court's denial of the motion. Doing so gives Defendant the benefit of his bargain and frees the trial court of any error in accepting his guilty plea.

### A. Defendant's Motion

Defendant asserts that the trial court erroneously interpreted the Good Samaritan Law and that he should be immune from prosecution. A trial court must dismiss certain charges against a defendant who "has been granted immunity by law from prosecution," N.C.G.S. § 15A-954, because "[i]mmunities are not mere bars to conviction or judgment; they are protections against being charged or haled into court at all." *State v. Osborne*, 275 N.C. App. 323, 327 (2020) (distinguishing § 90-96.2's grant of prosecutorial immunity from our common law's recognition of jurisdictional immunity).[4] In *State v. Osborne*, a concurring opinion noted that:

> [t]he legislature's intent in passing N.C.G.S. § 90-96.2 was to ensure that victims of drug overdoses, and those who may be with them or come across them, do not refrain from seeking medical attention out of fear of criminal prosecution. In light of the opioid overdose epidemic in this state, the legislature enacted a policy to sacrifice prosecutions for

---

[4]   North Carolina has broadly recognized this crucial distinction between statutory and inherent prosecutorial protections. *Compare* N.C.G.S. § 90-96.2(a), (c3) (granting "limited immunity from prosecution" to someone who renders medical aid for a drug overdose), *with Steelman v. City of New Bern*, 279 N.C. 589, 592 (1979), (documenting North Carolina's common-law recognition of "governmental immunity"). *But see, e.g.*, *Lambert v. Town of Sylva*, 259 N.C. App. 294, 301 (2018) (characterizing "[g]overnmental immunity [a]s an affirmative defense" that "must be plead[ed] by the defendant" "like other forms of immunity").

possession of small amounts of drugs in order to save lives.
*State v. Osborne*, 372 N.C. 619, 637 (2019) (Earls, J., concurring). We agree. The Good Samaritan Law protects an overdose victim from prosecution for certain drug crimes if the incriminating evidence was obtained through his timely request for and receipt of medical assistance. N.C.G.S. § 90-96(a)–(b). The exemptions include a "felony violation . . . for possession of less than one gram of any controlled substance." *Id.* § 90-96.2(c). We review the denial of a defendant's motion to dismiss *de novo. Smith*, 186 N.C. App. 57, 62 (2007). Because a motion to determine immunity is functionally a motion to dismiss, "the evidence must be considered in the light most favorable to the State," which "is entitled to every reasonable inference to be drawn therefrom." *State v. Gibson*, 342 N.C. 142, 150 (1995).

To sustain a motion for immunity dismissal as a drug-overdose victim under N.C.G.S. § 90-96.2(b), a would-be defendant must show that he:

(1) Sought medical assistance for a drug-related overdose by contacting the 911 system, a law enforcement officer, or emergency medical services personnel;
(2) Acted in good faith when seeking medical assistance, upon a reasonable belief that he was the first to call for assistance;
. . . .
(4) Did not seek the medical assistance during the course of a lawful search; and that
(5) The evidence for prosecution of the subsection (c3) [offenses] was obtained as a result of the person seeking medical assistance for the drug-related overdose.

N.C.G.S. § 90-96.2(b)(1)–(2), (4)–(5) (citation modified). The General Assembly

defines a "drug-related overdose" as "an acute condition, including . . . extreme physical illness, coma, or death resulting from the consumption or use of a controlled substance and that a lay person would reasonably believe to be a drug related overdose that requires medical assistance." *Id.* § 90-96.2(a). It further defines an "acute illness" as "a condition . . . serious enough to require medical care or treatment to avoid a reasonable possibility of death or permanent harm." *Id.* § 58-67-88(a).[5]

Defendant argues that the trial court erred by requiring him to show one of the listed conditions in subdivision (a) instead of applying a reasonable-person standard. Defendant testified at the motion hearing that he "intravenously injected the fentanyl and went out" and that "[i]t's just the way it is when you overdose." He further admitted to "overdos[ing] quite a few times." Defendant's evidence shows only his drug-induced unconsciousness, not that the caller reasonably believed it resulted from drugs. Defendant testified that first responders gave him Narcan. But Agent Dean's ability to quickly awaken him by tapping on the car window indicates a degree of unconsciousness far short of an "acute illness." Based on his training and experience, Lieutenant Barkley testified that individuals recovering from an overdose are usually "cyanotic, sweating, clammy," of which Defendant showed no physical signs. Viewing this evidence in a light most favorable to the State, Defendant did not

---

[5]   We note that "statutes addressing the same subject matter generally should be read" "*in para materia*" "as if they were one law." Lisa Schultz Bressman et al., *The Regulatory* State 208–09 (3d ed. 2020) (describing various "Whole Code Canons") (quotation omitted).

overdose for the purposes of § 90-96.2(b)(1). Thus, Defendant cannot meet the threshold requirement of experiencing a drug-related overdose which triggers immunity from prosecution. The remaining elements under § 90-96.2(b) are either nonconclusive or operate in Defendant's favor. But because we find that Defendant cannot satisfy § 90-96.2(b)(1), we need not analyze the remaining provisions. Because his motion cannot meet the Good Samaritan Law's requirements on the merits, this Court holds that he is not entitled to its immunity from prosecution and that the trial court did not err in denying the motion.

## B. Defendant's Plea

Defendant asserts that the trial court erred in accepting his plea agreement because he "[can]not receive the benefit of his bargain." The trial court cannot accept a guilty plea "without first determining that the plea is a product of informed choice." N.C.G.S. § 15A-1022(b). A defendant's guilty plea "must be made knowingly and voluntarily . . . after full appraisal of the consequences." *State v. Harbison*, 315 N.C. 175, 180 (1985) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)). The guilty plea must be "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court." *State v. Smith*, 352 N.C. 531, 550–51 (2000) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1960). We review *de novo* whether a defendant made an "informed choice by virtue of the fact that he did not get the benefit of his bargain [a]s a question of law." *State v. Tinney*, 229 N.C. App. 616, 621 (2013).

Once accepted by the trial court, the plea binds "both the defendant and the State" to its terms. *State v. Tyson*, 189 N.C. App. 408, 413–14 (2008) (quotation omitted). Plea arrangements, "[w]hen viewed in light of the analogous law of contracts, . . . normally arise in the form of unilateral contracts." *State v. Collins*, 300 N.C. 142, 149 (1980). And a defendant who pleads guilty is "entitled to . . . the benefit of his bargain." *State v. Wall*, 348 N.C. 671, 676 (1998). If the State cannot "fulfill promises made to the defendant in negotiating a plea bargain[,] the defendant is entitled to relief, typically in the form of specific performance . . . or withdrawal of the plea itself," *i.e.*, "recission." *State v. King*, 218 N.C. App. 384, 390 (2012) (quotation omitted) (holding specific performance was best option in defendant's circumstance).

Here, Defendant pled guilty according to the plea agreement on the express condition that he could "preserve[ ] the issue of [the] denial of [his] pretrial" "motion to determine immunity" under N.C.G.S. § 15A-979. Although this statute applies only to suppressive motions, *see id.* § 15A-979(b), the trial court advised Defendant—who confirmed his understanding—that pleading guilty would expressly limit his right to appeal to only those conditions specified in the agreement's text. But because Defendant pled guilty "in consideration for" the State's promise upon which he relied, he is entitled to the benefit of that promise. *Wall*, 348 N.C. at 676. By granting certiorari and reviewing Defendant's motion as promised in his plea agreement, we hold that Defendant made an "informed choice" to enter into the plea agreement that

also "provide[s] him the benefit of his bargain." *Demaio*, 216 N.C. at 562. As a result, we hold that the trial court did not err by accepting his guilty plea.

## IV. Conclusion

For the reasons above, this Court holds that the trial court did not err either (1) by denying his motion to determine immunity under N.C.G.S. § 90-96.2 or (2) by permitting Defendant to enter into his plea agreement.


NO ERROR.

Judge GORE concurs.

Judge HAMPSON concurs in part and dissents in part in a separate opinion.

HAMPSON, Judge, concurring in part, dissenting in part.

I agree with the majority in issuing certiorari to provide us with appellate jurisdiction in this matter. However, I agree with both the State and Defendant that—where Defendant's plea was not the product of informed choice—the proper outcome in this case is to vacate the Judgment and underlying plea agreement and remand this matter to the trial court, where Defendant "may withdraw his guilty plea and proceed to trial on the criminal charges. He may also withdraw his plea and attempt to negotiate another plea agreement[.]" *State v. Wall*, 348 N.C. 671, 676, 502 S.E.2d 585, 588 (1998). Accordingly, I concur in part and dissent in part.

As both parties agree, Defendant has no right to appeal based on his challenge to the trial court's denial of Defendant's Motion to Dismiss pursuant to N.C. Gen. Stat. § 90-96.2 (2023). First, no provision of N.C. Gen. Stat. § 15A-1444 provides any right of appeal from a guilty plea in this instance. Second, nothing in the text of N.C. Gen. Stat. § 90-96.2 itself provides for any right of appeal.[1] Moreover, in *Osborne*, this Court held that Section 90-96.2 does not provide any jurisdictional requirement, but rather simply grants "traditional immunity from prosecution." *State v. Osborne*, 275 N.C. App. 323, 328, 853 S.E.2d 241, 245-46 (2020). We further noted "[t]his type

---

[1] I fear the majority's judicial creation of a right to appeal—by way of certioriari—the denial of a motion to dismiss made pursuant to N.C. Gen. Stat. § 90-96.2 unsupported by any statutory text will lead to unintended consequences. First, contrary to *Osborne*, the majority seems to elevate Section 90-96.2 to jurisdictional status. Second, application of the majority's reasoning might lead one to think there could be a right to an interlocutory appeal, prior to judgment, of a denial of a motion under this statute by way of certiorari.

of immunity must be asserted as a defense by the defendant in the trial court proceeding. The failure to raise the issue waives it and precludes further review on appeal." *Id.* (citation omitted).  Thus, by entering a guilty plea, Defendant has waived all such traditional non-jurisdictional defenses.  *See State v. Caldwell*, 269 N.C. 521, 526, 153 S.E.2d 34, 37–38 (1967) ("An accused by pleading guilty waives all defenses other than that the indictment charges no offense.").

In addition, Defendant has made no motion before the trial court to withdraw his plea.  "Thus, according to N.C.G.S. § 15A-1444 defendant is not entitled as a matter of right to appellate review of his contention that the trial court improperly accepted his guilty plea[.]"  *State v. Bolinger*, 320 N.C. 596, 601, 359 S.E.2d 459, 462 (1987).  Instead, "Defendant may obtain appellate review of this issue only upon grant of a writ of certiorari."  *Id.*

Indeed, our Courts recognize:

if a defendant does not have an appeal of right, our statute provides for the defendant to seek appellate review by filing a petition for writ of certiorari. N.C. Gen. Stat. § 15A-1444(e) (2009). . . . If a defendant does not have an appeal as of right and we are not permitted under Rule 21 or *Bolinger* to grant certiorari on issues the defendant was promised would be preserved for appeal, then the plea agreement violates the law. In such a situation, the appellate court must place "the defendant back in the position he was in before he struck his bargain[.]" "[T]he appellate court should vacate the judgment and remand the case to the trial court where defendant 'may withdraw his guilty plea and proceed to trial on the criminal charges . . . [or] withdraw his plea and attempt to negotiate another plea agreement that does not violate [State law].' "

*State v. Demaio*, 216 N.C. App. 558, 564–65, 716 S.E.2d 863, 867–68 (2011) (citations omitted).

Here, the plea agreement violates the law. As a term of the plea arrangement, Defendant was purportedly permitted to preserve his right to appeal the denial of his pretrial motion under Section 90-96.2. There is simply no right to appeal the denial of such a motion following the entry of a guilty plea. Moreover, there is no indication that in entering this plea, Defendant was made aware that his right to appeal was in question. *See, e.g.*, *State v. Tinney*, 229 N.C. App. 616, 622, 748 S.E.2d 730, 735 (2013) (declining to apply *Demaio* where "Defendant had ample notice that the provision in his plea agreement reserving his right to challenge the validity of the transfer order on appeal was, in all probability, unenforceable and elected to proceed with his guilty plea in spite of the fact that he knew that the provision in question was of questionable validity.").[2] As such, it was not the product of an informed choice. *Id.* (a guilty plea entered pursuant to a transcript of plea which purports to reserve the

---

[2] The majority's concerns notwithstanding, if a defendant may be shown to have knowingly planted a poison-pill term in a plea arrangement, application of *Tinney* would prevent a defendant from taking advantage of the situation precisely because the Defendant entered the plea knowingly and as the product of an informed choice. Moreover, vacating and remanding does not necessarily lead to a windfall for a defendant, as the State may simply proceed on the original charges in the indictment(s) rather than merely the lesser offenses in a plea arrangement. *See, e.g.*, *State v. Rico*, 218 N.C. App. 109, 122, 720 S.E.2d 801, 809 (Steelman, J., dissenting) (concluding judgment should be vacated, guilty plea set aside, and the case remanded for disposition of original charges where trial court erroneously imposed aggravated sentence based solely on defendant's guilty plea and stipulation as to aggravating factor), *rev'd per curiam for reasons stated in dissent*, 366 N.C. 327, 734 S.E.2d 571 (2012).

right to seek appellate review of a particular legal issue which is not subject to such review following the entry of a guilty plea does not result in the entry of a plea which "is a product of informed choice.").

Thus, in this case, Defendant's plea arrangement violates the law. Therefore, the Judgment entered upon that arrangement cannot stand. Consequently, this Court should—as requested by both parties—vacate the judgment and remand this matter to the trial court, where Defendant may withdraw his plea and either proceed to trial on the original charges or attempt to negotiate a new plea agreement. *See Wall*, 348 N.C. at 676, 502 S.E.2d at 588.