IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-489

 No. COA20-438

 Filed 21 September 2021

 Guilford County, No. 12 CVS 4940

 WILLIAM THOMAS FOX and SCOTT EVERETT SANDERS, Plaintiffs,

 v.

 THE CITY OF GREENSBORO; MITCHELL JOHNSON, individually and in his
 officially capacities; TIMOTHY R. BELLAMY, individually and in his officially
 capacities; GARY W. HASTINGS, individually and in his officially capacities;
 ERNEST L. CUTHBERSON, individually and in his officially capacities; JOHN D.
 SLONE, individually and in his officially capacities; NORMAN O. RANKIN,
 individually and in his officially capacities; AND MARTHA T. KELLY, individually
 and in her officially capacities, Defendants.

 Appeal by Plaintiffs from order entered 14 August 2012 by Judge Joseph

 Turner and order entered 18 December 2019 by Judge David L. Hall in Guilford

 County Superior Court. Heard in the Court of Appeals 10 March 2021.

 Morrow, Porter, Vermitsky, & Taylor, PLLC, by John C. Vermitsky, for
 Plaintiffs-Appellants.

 Nelson Mullins Riley & Scarborough, LLP, by Lorin J. Lapidus, for
 Defendants-Appellees.

 WOOD, Judge.

¶1 Plaintiffs William Fox (“Fox”) and Scott Sanders (“Sanders”) (collectively,

 “Plaintiffs”) appeal two separate orders. Plaintiffs first appeal an order dismissing

 their civil conspiracy and abuse of process claims. Plaintiffs also appeal an order
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 granting summary judgment in favor of Defendants with respect to their malicious

 prosecution cause of action. After careful review of the record and applicable law, we

 affirm in part and reverse in part.

 I. Factual and Procedural Background

¶2 In 1984, Defendant Mitchell Johnson (“Defendant Johnson”) became employed

 by the City of Greensboro. In early 2000, Defendant Johnson became the Deputy City

 Manager. While Defendant Johnson was the Deputy City Manager, the City

 Manager Ed Kitchen (“Kitchen”) asked Defendant Johnson “to review a letter from

 the NAACP expressing concerns” of racial misconduct within the Greensboro Police

 Department (“GPD”). In the summer of 2005, while Defendant Johnson’s review of

 the concerns raised was ongoing, Kitchen retired, and Defendant Johnson became the

 City Manager.

¶3 In 2005, Plaintiffs were law enforcement officers with the GPD. Plaintiffs were

 assigned to the “Special Intelligence Section” (“SIS”), a subdivision of the Special

 Investigations Division (“SID”) within the GPD. The SIS was “a unit designed to

 investigate, among other things, allegations of criminal police misconduct, outlaw

 motorcycle gangs, street gangs, dangerous persons, organized crime,” and to “protect

 celebrities or high risk targets visiting Greensboro, North Carolina.”

¶4 In or around June 2005, GPD Officer James Hinson (“Hinson”) and other

 African American officers raised concerns that Chief of Police David Wray (“Chief
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 Wray”) and “a group of Caucasian officers coined the ‘Secret Police’ ” were racially

 targeting African American police officers. Hinson alleged the SIS, including

 Plaintiffs, were involved in the “Secret Police.”

¶5 The allegations of racial discrimination and targeting centered around the

 SIS’s use of an alleged “Black Book.” The “Black Book” was a black binder containing

 pictures of nineteen African American officers and various male African American

 individuals allegedly used “as part of an effort to target African American police

 officers for criminal investigations.” The SIS asserted that the “Black Book” was a

 legitimate investigative tool being used to investigate an allegation of sexual assault

 by an on-duty African American officer. The “Black Book” contained photographs of

 minority male officers who were on-duty during the alleged sexual assault of an

 informant.

¶6 Due to the allegations of racial misconduct, Defendant Johnson asked Chief

 Wray about the NAACP’s concerns and the existence of the Black Book. Chief Wray’s

 written response led Defendant Johnson to “believe that [Wray] denied the existence

 of anything matching the description of the ‘Black Book.’ ” Defendant Johnson

 reported to the NAACP that the “Black Book” did not exist.

¶7 In August 2005, Defendant Johnson attended a meeting with African

 American GPD officers at their request. During this meeting, Defendant Johnson

 heard the officers’ concerns regarding the Wray administration. Around this time,
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 Defendant Johnson also learned of concerns regarding the SID from the State Bureau

 of Investigation (“SBI”). Due to repeated concerns regarding the GPD, Defendant

 Johnson contacted City Attorneys “to find an outside entity to review the conduct of

 the Wray administration to determine if there was any truth to the concerns.” The

 City’s legal department (“City Legal”), in response, recommended Risk Management

 Associates (“RMA”), an independent consulting company, to review the Wray

 administration. Defendant Johnson hired RMA to “review the conduct of the . . .

 Wray [a]dministration[,]” but “did not ask RMA to investigate any particular

 individual.”

¶8 While the RMA investigation was ongoing, Defendant Johnson “had the legal

 department of the City of Greensboro investigate general administrative issues in the

 GPD.” The RMA report caused Defendant Johnson to believe Chief Wray “had not

 been truthful about the ‘Black Book’ and raised other serious concerns about the

 leadership of the [GPD].” As a result, Defendant Johnson then “chose to place Wray

 on administrative leave” on January 6, 2006. At that time, Defendant Timothy

 Bellamy (“Defendant Bellamy”), the Assistant Chief of Police, became the interim

 Chief of Police. Shortly after Chief Wray was placed on administrative leave, he
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 resigned as Chief of Police on January 9, 2006.1 After Chief Wray’s resignation,

 Defendant Bellamy was tasked with reviewing the RMA and City Legal reports.

¶9 Upon his review of the RMA report, Defendant Bellamy had “very serious

 concerns about the leadership of the Wray administration.” According to the report,

 Officer Randall Brady (“Brady”) revealed to the RMA that “he was keeping in the

 trunk of his police car a book that matched the description of the ‘Black Book.’ ”

 According to Sanders, Brady secured the “Black Book” in the trunk of his patrol

 vehicle to avoid speculation that the “Secret Police” were showing the “Black Book”

 to a variety of individuals in an effort to incriminate minority officers.

¶ 10 Upon securing the “Black Book” from Brady’s trunk, Defendant Bellamy gave

 the “Black Book” to Internal Affairs (“IA”). IA then began its investigation.

 Thereafter, Defendant Bellamy assigned Captain Gary Hastings (“Defendant

 Hastings”) “with the task of securing and reviewing materials within [SID] . . . for

 possible criminal activity.” Defendant Hastings “put together a team” of officers from

 the Criminal Investigation Division (“CID”) to review the activity of the SID and

 Wray administration.

¶ 11 While Defendant Hastings was investigating the SID, Defendant Bellamy met

 1 The Federal Bureau of Investigation (“FBI”) began an investigation of the Wray

 administration on January 12, 2006. The FBI did not substantiate any violation of civil rights
 or federal law.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 with Guilford County District Attorney Doug Henderson (“Henderson”) about the

 RMA report and Defendant Hastings’s investigative findings. Henderson informed

 Defendant Bellamy that the Guilford County District Attorney’s Office could not

 participate in the investigation and that the North Carolina Attorney General’s Office

 would need to be contacted about the concerns regarding alleged criminal conduct

 within the GPD.

¶ 12 Henderson drafted a letter to Assistant Attorney General James Coman

 (“Coman”) in March 2006. Henderson also wrote a letter to the Director of the SBI,

 requesting a criminal investigation of the Wray administration on March 13, 2006.

 On April 4, 2006, Coman responded to Henderson, “accepting responsibility to

 determine whether or not a criminal investigation should be undertaken by the

 [SBI].” Coman and a Special Deputy Attorney General traveled to Greensboro

 throughout April and May 2006 to review police reports and tapes. On June 9, 2006,

 a meeting was held at the SBI District Office in Greensboro, where it was determined

 the SBI would mount an investigation of the Wray administration.

¶ 13 Throughout the SBI investigation, agents met with and interviewed

 approximately seventy-five individuals, including Plaintiffs and Defendants Johnson,

 Bellamy, and Hastings. Agents also reviewed “69 CDs of audio recordings that were

 retrieved from Detective Scott Sanders’ city computer and other sources.” One

 witness, Dana Bailey (“Bailey”), discussed how Sanders asked her to create lineups
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 of male African American officers.

¶ 14 Bailey was employed by the GPD in 2000 and worked as an investigative

 specialist. In or around January 2003, Sanders asked Bailey to put together lineups

 consisting of five officers. Bailey believed the officers were Hinson, Snipes, Wallace,

 Fulmore and Norman Rankin (“Defendant Rankin”). Bailey stated her lineups were

 created using Department of Motor Vehicles (“DMV”) photographs, and she cropped

 any photograph of an officer in uniform “so it looked similar to others in the lineup.”

¶ 15 In January 2005, Sanders asked Bailey to put together a list of every officer

 who had worked on a particular date and shift. Bailey did so, and Sanders requested

 “16 or 17 more lineups,” and told her “the request was by the authority of Deputy

 Chief Brady.” Bailey created the lineups, and she mentioned in her SBI interview

 that “all of the officers she did lineups on were black.” Sanders did not mention what

 the lineups were for, nor did Bailey “want to know what they were for.” During the

 investigation of the GPD, Bailey reported some computers were taken for

 investigation, but one of hers was not. “[I]t bothered [Bailey] that a complete

 investigation would not be done if that computer was not taken and looked at.”

¶ 16 Defendant Hastings was also interviewed by the SBI. Defendant Hastings’s

 interview revealed Defendant Bellamy “designated Hastings as the operational

 commander for the inventory, review, and analysis of the seized property belonging

 to the [SID].” Defendant Hastings “was made the commander for any subsequent
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 criminal investigation involving any allegation or evidence of a crime.” Defendant

 Hastings stated the CID “seized a ‘ton’ of stuff including electronic media, such as

 audio cassette tapes, VHS tapes, other video tapes, recordable CDs, computer drives,

 cellular telephones, and recordable DVDs.” While Defendant Hastings was

 investigating the SID, Defendant Bellamy re-assigned members of the SIS and SID

 to other divisions.

¶ 17 While Defendant Hastings and his team were reviewing the materials seized

 from the SID, Defendant Hastings “recalled that one of his homicide detectives,

 [Defendant Rankin], had been transferred from his division to Special Intelligence.”

 Defendant “Hastings ha[d] received information that Officer John Sloan2 [sic]

 (“Defendant Slone”) had been instructed to keep [Defendant Rankin] busy in some

 investigation that he had been assigned to handle.” Defendant Hastings “suspected

 [Defendant] Rankin was placed in Special Intelligence and assigned some

 investigation as window-dressing to offset the perception that black officers in that

 unit were not allowed to investigate other officers.”

¶ 18 Defendant Rankin was also interviewed during the SBI investigation. Brady

 assigned Defendant Rankin to the SID to work on a special assignment on June 23,

 2005. Defendant Rankin was tasked with investigating “a sensitive matter,”

 2 Throughout the record, Defendant Slone is referred to as “Sloan.” It appears from
 the complaint and the parties’ briefing that the appropriate spelling is “Slone.”
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 involving an informant. When Brady assigned Defendant Rankin to the SID, he

 called Fox and Ernest Cuthbertson (“Defendant Cuthbertson”) to help investigate the

 case. During this meeting, Brady “made some comment about [Sanders] being tied

 up on the . . . Hinson investigation and some other things and that was why he needed

 to assign the case to [Defendants] Rankin and Cuthbertson.”

¶ 19 Defendant Rankin was assigned to investigate allegations that certain GPD

 officers solicited prostitutes. Defendant Rankin was instructed to contact Sanders

 because Sanders had additional information about the case. Defendant Rankin did

 so, and Sanders provided him with names and contact information. The allegations

 regarding prostitution came from an informant who went by the name “CC.”

 Defendant Rankin recalled CC would only speak with Defendant Slone.

¶ 20 Defendants Slone and Rankin discussed CC, and why CC was important to the

 investigation. Defendant Slone later told Defendant Rankin that “Sloan [sic] had

 been instructed to lead [Defendants] Rankin and Cuthbertson in the wrong direction

 and give them false information to keep them from ever meeting with [the

 informant].”

¶ 21 In his SBI interview, Defendant Slone discussed a phone call he received from

 Sanders. Sanders told Defendant Slone the SID was not working the investigation,

 but Chief Wray had assigned Defendants Rankin and Cuthbertson to investigate the

 case. Defendant Slone detailed a meeting he had with Plaintiffs, where Plaintiffs
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 expressed concerns regarding Defendants Rankin and Cuthbertson’s competency.

 Defendant Slone was led to believe “by Brady, Fox, and Sanders” that Defendants

 Cuthbertson and Rankin were “dirty cops.” According to Defendant Slone, he was

 assigned to work the case, and was tasked with ensuring Defendants Rankin and

 Cuthbertson did not obtain certain evidence. Defendant Slone also told SBI agents

 that Plaintiffs were to be blind copied on any e-mails between Defendants Slone,

 Rankin, and Cuthbertson.

¶ 22 Winston-Salem law enforcement officer Theodore Hill (“Hill”) corroborated

 Defendant Slone’s statements.3 Hill recounted a meeting he attended with Defendant

 Slone and two detectives at a gas station parking lot. “Hill related that [Defendant

 Slone] was trying to give the other detectives some information he had obtained,” but

 the detectives “did not want it because if they took the information, they would have

 to give it to whoever was working on some case.” Hill recalled the information

 Defendant Slone was trying to give to the detectives “was supposed to be a picture of

 a police officer with a stripper or someone else.”

¶ 23 Defendant Slone and Hill’s statements to the SBI are further corroborated by

 Defendant Rankin’s interview. Defendant Rankin was assigned to investigate

 3 Fox filed “truthfulness concerns” regarding Defendant Slone, alleging Defendant

 Slone’s statements were inconsistent. GPD Sergeant Mike Loy (“Loy”), working in IA, drafted
 a memorandum regarding Defendant Slone’s inconsistent statements. Notably, Defendant
 Slone’s statements are corroborated, in part, by Hill and Defendant Rankin.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 allegations of police officers soliciting prostitutes. After Defendant Rankin received

 his assignment, he thought “it was like an invisible wall was being put up to keep

 him from talking to” the informant. Later, Defendant Slone admitted to Defendant

 Rankin he was asked to “lead [Defendants] Rankin and Cuthbertson in the wrong

 direction and give them false information to keep them from ever meeting with the

 informant.”

¶ 24 Fox also participated in the SBI investigation. Fox denied knowing Sanders

 was getting blind copies of e-mails between officers and claimed he was led to believe

 CC “and [Defendant Rankin] did not get along.” He further denied “setting

 [Defendant] Rankin up to fail.”

¶ 25 Throughout their investigation, SBI agents became concerned that Plaintiffs

 obstructed investigations and unlawfully accessed a federal government computer.

 Specifically, the agents were concerned Sanders accessed a federal computer assigned

 to officer Julius Fulmore (“Fulmore”).

¶ 26 Fulmore had been assigned a laptop computer by an agent of the Department

 of Housing and Urban Development (“HUD”) and used the laptop until June 4, 2004.

 Fulmore did not allow any other officer to use the computer, and it was in his sole

 possession. Fulmore told SBI agents that Sanders went to the HUD agent for consent

 to search the HUD laptop twice. The HUD agent did not consent to a search and told

 Sanders he would need Fulmore’s permission or a letter from Sanders’s supervisor
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 requesting permission to access the computer. Fulmore did not consent to any

 individual searching the HUD computer and the record does not reveal a request from

 Sanders or his supervisor for permission to access the laptop.

¶ 27 On December 20, 2003, Sanders asked SBI agent Gary Rick Cullop (“Cullop”)

 to examine a computer for him. Cullop stated he removed the hard drive from the

 computer and made a “mirror copy” of the hard drive. According to Cullop’s SBI

 interview, “he did not know by what consent he searched the computer for Sanders.”

 Cullop believed “someone in Sanders’ chain of command gave permission for the

 search.” Cullop did not know the computer was owned by HUD and the federal

 government.

¶ 28 On September 18, 2006, the SBI agents investigating the Wray administration

 presented Cullop with a computer. The computer SBI agents presented to Cullop was

 the same computer given to Fulmore by the HUD agent. Cullop confirmed that the

 computer he inspected for Sanders was the same computer presented to him on

 September 18, 2006.4

¶ 29 On September 17, 2007, Sanders was indicted for one count of accessing a

 government computer in violation of N.C. Gen. Stat. § 14-454.1(b); felonious

 4 Cullop was able to confirm the computer presented by the SBI agents was the same

 computer he examined for Sanders by matching the serial number from the computer to his
 notes.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 obstruction of justice; and felonious conspiracy “to undermine a legitimate criminal

 investigation.” That same day, Fox was indicted for felonious obstruction of justice

 and felonious conspiracy to obstruct justice. Plaintiffs were arrested on September

 21, 2007.5 Consequently, Plaintiffs were suspended without pay and were instructed

 not to issue any comments regarding the investigation.

¶ 30 Sanders’s criminal trial for one count of accessing a government computer

 began on February 16, 2009. During Sanders’s trial, Defendant Hastings testified on

 his behalf and was believed to be a beneficial witness for Sanders. Four days later,

 Sanders was acquitted of accessing a government computer. The remaining charges

 against both Plaintiffs were dismissed on February 23, 2009.6

¶ 31 On April 1, 2011, Plaintiffs brought suit against the City of Greensboro;

 Defendants Bellamy, Hastings, Slone, Cuthbertson, Johnson, and Martha Kelly

 (“Defendant Kelly”); and the RMA in the federal district court for the Middle District

 of North Carolina. The District Court dismissed all of Plaintiffs’ asserted causes of

 action, upon motion by the named defendants, on August 27, 2011. See Fox v. City of

 5 Plaintiffs speculate that former Attorney General Roy Cooper, judges, politicians,

 and the SBI’s political motivations caused Coman to seek criminal indictments.
 6 Coman’s affidavit demonstrates he “told the attorneys for Sanders and Fox that if

 Sanders was acquitted, [Coman] would drop all remaining criminal charges against Sanders
 and Fox.” Plaintiffs’ attorney, Seth Cohen, submitted an affidavit corroborating this
 statement.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 Greensboro, et al., 807 F. Supp. 2d 476 (M.D.N.C. 2011).

¶ 32 On January 20, 2012, Plaintiffs filed suit against Defendants Johnson,

 Bellamy, Hastings, Kelly,7 Slone, Rankin, and Cuthbertson in Forsyth County

 Superior Court (collectively, “all Defendants”). Plaintiffs asserted a civil conspiracy

 cause of action against all Defendants in both their official and individual capacities.

 Plaintiffs further alleged abuse of process and malicious prosecution causes of action

 against Defendants Johnson, Bellamy, Hastings, and Kelly in both their official and

 individual capacities. Plaintiffs asserted additional claims for declaratory judgment

 and punitive damages.

¶ 33 Plaintiffs allege Defendant Johnson wrongfully ordered the investigation of

 Plaintiffs, directed City Attorneys to lie to Plaintiffs, controlled the flow of

 information to the SBI, instigated Plaintiffs’ arrest, and failed to provide the SBI with

 exculpatory information. It was further alleged Defendant Johnson provided City

 Council with false and misleading information about the “Black Book,” and

 improperly provided the media and public with false and misleading information.8

 7 We need not address the merits of Plaintiffs’ claims regarding Defendant Kelly.

 Plaintiffs voluntarily dismissed their claims against Defendant Kelly on October 8, 2018. See
 Hous. Auth. of City of Wilmington v. Sparks Eng’g. PLLC, 212 N.C. App. 184, 187, 711 S.E.2d
 180, 182 (2011).
 8 Throughout the investigations of the Wray administration, Defendants Johnson and

 Bellamy engaged in press releases regarding the “Black Book.” Plaintiffs contend the
 statements made to the press, as well as statements made to City Council, were
 inflammatory, misleading, and false. Plaintiffs further contend these statements played a
 role in the SBI investigation and the decision to criminally indict Plaintiffs.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

¶ 34 Regarding Defendant Bellamy, Plaintiffs contend he “help[ed] to create false

 accusations that [Plaintiffs] were wrongfully targeting minority officers”; controlled

 the flow of information to the RMA, City Attorneys, and SBI; and provided false and

 misleading information during the multiple investigations of the Wray

 administration. According to Plaintiffs’ complaint, Defendant Bellamy “helped to

 create a false transcript” of an audio recording between Sanders, Wray, and others;

 failed to provide exculpatory information regarding Plaintiffs’ criminal charges; and

 “[failed] to timely act to investigate . . . truthfulness allegations” that Defendant Slone

 provided false information during the investigations.

¶ 35 Defendant Hastings was accused of aiding in the creation of false accusations

 against Plaintiffs; “[a]uthoring memorandum accusing [Plaintiffs] of illegal and

 immoral conduct”; instructing Defendant Kelly to destroy memoranda regarding the

 investigation of Plaintiffs; and helped to create a false transcript of an audio recording

 involving Sanders. Plaintiffs further alleged Defendant Hastings provided false and

 misleading information to City Council and police personnel.

¶ 36 Plaintiffs contend Defendants Slone, Rankin, and Cuthbertson participated in

 creating false accusations against Plaintiffs, and knowingly provided the RMA and

 SBI with false or misleading information during the investigations of the Wray

 administration. It was further alleged that Defendant Kelly, a GPD Captain, knew

 of the false information provided during the SBI investigation and failed to take
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 appropriate action. Defendant Kelly was further accused of destroying memoranda

 regarding the investigations, including a memorandum referred to as “Memo 9.”

 Memo 9 allegedly “contained exculpatory evidence that [Plaintiffs] had not acted

 improperly.”

¶ 37 All Defendants moved to dismiss Plaintiffs’ complaint for improper venue,

 failure to state a claim upon which relief can be granted, and failure to comply with

 Rule 9 of our rules of civil procedure. The case was transferred to Guilford County

 Superior Court by consent order in March 2012.

¶ 38 The Guilford County Superior Court granted all Defendants’ motion to dismiss

 in part, dismissing Plaintiffs’ civil conspiracy and abuse of process claims on August

 13, 2012. The trial court denied Defendants Johnson, Bellamy, and Hastings’s motion

 to dismiss Plaintiff’s malicious prosecution cause of action. Plaintiffs appealed to this

 Court on September 13, 2012.

¶ 39 Plaintiffs’ appeal was dismissed as interlocutory on October 1, 2013.9 See Fox

 v. City of Greensboro, No. 13-171-2, 2013 N.C. App. LEXIS 1321 (N.C. Ct. App. Dec.

 17, 2013). Plaintiffs filed a petition for discretionary review with the North Carolina

 Supreme Court on January 21, 2014. This petition was denied in April 2014.

 9 Plaintiffs’ appeal was originally heard on August 13, 2013, and an opinion was filed

 on October 1, 2013. Plaintiffs filed a petition for rehearing on November 1, 2013, which was
 allowed on November 21, 2013. On December 17, 2013, a superseding opinion was issued,
 dismissing Plaintiffs’ appeal as interlocutory.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

¶ 40 Defendants Johnson, Bellamy, Hastings, and Kelly moved for judgment on the

 pleadings on the basis of collateral estoppel in the Guilford County Superior Court on

 August 4, 2014. These Defendants contended Plaintiffs’ malicious prosecution claim

 was barred by the doctrine of collateral estoppel “given the final judgment in the prior

 case Fox v. City of Greensboro, 807 F. Supp. 2d 476 (M.D.N.C. 2011).” This motion

 was denied.

¶ 41 On October 16, 2014, Defendants Johnson, Bellamy, Hastings, and Kelly

 appealed to this Court. This Court issued its opinion on October 6, 2015, holding,

 “Plaintiffs are not collaterally estopped from bringing their malicious prosecution

 claims under state law.” Fox v. Johnson, 243 N.C. App. 274, 288, 777 S.E.2d 314, 325

 (2015). These Defendants petitioned our Supreme Court for discretionary review on

 November 9, 2015. The petition for discretionary review was denied on January 28,

 2016. On May 12, 2016, this case was designated as exceptional pursuant to Rule

 2.1(a) of the General Rules of Practice. Thereafter, the parties engaged in discovery.

¶ 42 Plaintiffs and Defendants Johnson, Bellamy, Hastings, and Kelly were

 deposed. Sanders conceded in his deposition that he had “no personal knowledge of

 any discussion or conversation any defendant had with anyone at the SBI,” other

 than reading through their SBI interviews “after the fact.” Sanders further conceded

 that he “had no personal knowledge of any of these [D]efendants” instructing other

 law enforcement officers “not to provide information to the SBI.” When asked about
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 the contents of Memo 9, Sanders admitted he did not know if it related to the criminal

 charges brought against him.

¶ 43 During Fox’s deposition, he conceded he did not know the contents of Memo 9,

 and he “[did not] know what that memo had to do with.” Fox testified he had “very

 little contact” with Defendants Bellamy and Hastings. Fox conceded that he did not

 believe “the charges were personal against [him,]” but that the charges “were just a

 means to an end.” Further, Fox stated his belief that Defendant Hastings’s “actions

 or motivation was prompted by [Hastings’s] relationship with Wray.”

¶ 44 Defendants Johnson, Bellamy, and Hastings moved for summary judgment

 with respect to Plaintiffs’ malicious prosecution claim in July 2019. The trial court

 granted this motion on November 6, 2019. Plaintiffs appealed on December 31, 2019.

 II. Discussion

¶ 45 Plaintiffs raise several arguments on appeal, each will be addressed in turn.

 A. Motion for Summary Judgment

¶ 46 Plaintiffs first contend the trial court erred in granting summary judgment in

 favor of Defendants Johnson, Bellamy, and Hastings with respect to Plaintiffs’

 malicious prosecution cause of action. Defendants Johnson, Bellamy, and Hastings

 contend Plaintiffs’ claim is barred by the affirmative defense of governmental

 immunity.

¶ 47 We review the “grant of a motion for summary judgment . . . [to determine]
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

whether any genuine issue of material fact exists and whether the moving party is

entitled to judgment as a matter of law.” Becker v. Pierce, 168 N.C. App. 671, 674,

608 S.E.2d 825, 828 (2005) (quoting Hoffman v. Great Am. Alliance Ins. Co., 166 N.C.

App. 422, 425, 601 S.E.2d 908, 911 (2004)).

 A defendant may show entitlement to summary judgment
 by (1) proving that an essential element of the plaintiff's
 case is non-existent, or (2) showing through discovery that
 the plaintiff cannot produce evidence to support an
 essential element of his or her claim, or (3) showing that
 the plaintiff cannot surmount an affirmative defense. Once
 the party seeking summary judgment makes the required
 showing, the burden shifts to the nonmoving party to
 produce a forecast of evidence demonstrating specific facts,
 as opposed to allegations, showing that he can at least
 establish a prima facie case at trial.

Hoffman, 166 N.C. App. at 424-26, 601 S.E.2d at 911 (internal quotation marks and

citations omitted). Summary judgment is appropriate “if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that any party is

entitled to judgment as a matter of law.” N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021).

 In order to support a malicious prosecution claim, [a]
 plaintiff must establish the following four elements: “(1)
 defendant initiated the earlier proceeding; (2) malice on the
 part of defendant in doing so; (3) lack of probable cause for
 the initiation of the earlier proceeding; and (4) termination
 of the earlier proceeding in favor of the plaintiff.”

Martin v. Parker, 150 N.C. App. 179, 182, 563 S.E.2d 216, 218 (2002) (quoting Best v.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 Duke Univ., 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994)); see also Cook v. Lanier,

 267 N.C. 166, 169, 147 S.E.2d 910, 914 (1966). “In cases for malicious prosecution in

 which the earlier proceeding is civil, rather than criminal, in nature, our courts

 require a plaintiff to additionally plead and prove a fifth element: ‘special damages.’

 ” Fuhs, v. Fuhs, 245 N.C. App. 367, 372, 782 S.E.2d 385, 388 (2016).

¶ 48 Here, the parties do not dispute the “earlier proceeding” terminated “in favor

 of the plaintiff,” as Sanders was acquitted of accessing a federal computer and the

 remaining charges against Plaintiffs were dismissed. Nor do the parties dispute that

 the earlier proceeding was criminal in nature. Thus, our review is limited to the

 remaining elements.

 1. Governmental Immunity

¶ 49 Because Defendants Johnson, Bellamy, and Hastings contend Plaintiffs’

 malicious prosecution and civil conspiracy claims are barred by the affirmative

 defense of governmental immunity, we first determine whether these Defendants

 acted with malice. See Lambert v. Town of Sylva, 259 N.C. App. 294, 301, 816 S.E.2d

 187, 193 (2018) (“Governmental immunity is an affirmative defense.”); see also Turner

 v. City of Greenville, 197 N.C. App. 562, 566, 677 S.E.2d 480, 483 (2009). “An

 affirmative defense is a defense that introduces a new matter in an attempt to avoid

 a claim, regardless of whether the allegations of the claim are true.” Strickland v.

 Hedrick, 194 N.C. App. 1, 10, 669 S.E.2d 61, 37 (2008) (quoting Williams v. Pee Dee
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 Elec. Membership Corp., 130 N.C. App. 298, 301-02, 502 S.E.2d 645, 647-48 (1998)).

¶ 50 “Under the doctrine of governmental immunity, a municipality is not liable for

 the torts of its officers and employees if the torts are committed while they are

 performing a governmental function.” Taylor v. Ashburn, 112 N.C. App. 604, 607,

 436 S.E.2d 276, 278 (1993) (citations omitted). When individual officers are named

 as defendants, the action “is one against the State for the purposes of applying the

 doctrine of sovereign immunity.” Houpe v. City of Statesville, 128 N.C. App. 334, 341,

 497 S.E.2d 82, 87 (1998). “[T]he actions of a city and its officials in investigating and

 disciplining a city police officer accused of criminal activity are likewise encompassed

 within the rubric of ‘governmental functions.’ ” Id. at 341, 497 S.E.2d at 87.

¶ 51 While police officers are “public officials” for the purposes of governmental

 immunity, they “are not shielded from liability if their alleged actions were corrupt

 or malicious . . . .” Shuping v. Barber, 89 N.C. App. 242, 248, 365 S.E.2d 712, 716

 (1988) (citations omitted); see also Strickland, 194 N.C. App. at 10, 669 S.E.2d at 67;

 Cline v. James Bane Home Bldg., LLC., ___ N.C. App. ___, 2021-NCCOA-266, ¶26

 (“Public official’s immunity precludes suits against public officials in their individual

 capacities and protects them from liability ‘[a]s long as a public officer lawfully

 exercises the judgment and discretion with which he is invested by virtue of his office,

 keeps within the scope of his official authority, and acts without malice or corruption

 . . . .’ ” (citation omitted)). “[A]n official may be held liable when he acts maliciously
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 or corruptly, when he acts beyond the scope of his duties, or when he fails to act at

 all.” Turner, 197 N.C. App. at 566, 677 S.E.2d at 483 (citation omitted). Thus, only

 tortious “actions that are malicious, corrupt, or outside the scope of official duties will

 pierce the cloak of official immunity.” Id. (citation, internal quotation marks,

 brackets, and ellipsis omitted). “[I]f the plaintiff alleges an intentional tort claim, a

 determination of governmental immunity is unnecessary since, in such cases, neither

 a public official nor a public employee is immunized from suit in his individual

 capacity.” Beck v. City of Durham, 154 N.C. App. 221, 230, 573 S.E.2d 183, 189 (2002)

 (citation, internal quotation marks, and brackets omitted).

¶ 52 A plaintiff alleging malicious or intentional acts by a governmental official

 faces a high bar:

 It is well settled that absent evidence to the contrary, it will
 always be presumed that public officials will discharge
 their duties in good faith and exercise their powers in
 accord with the spirit and purpose of the law. This
 presumption places a heavy burden on the party
 challenging the validity of public officials’ actions to
 overcome this presumption by competent and substantial
 evidence. Moreover, evidence offered to meet or rebut the
 presumption of good faith must be sufficient by virtue of its
 reasonableness, not by mere supposition. It must be
 factual, not hypothetical; supported by fact, not by surmise.

 Strickland, 194 N.C. App. at 10-11, 669 S.E.2d at 68 (citations, internal quotation

 marks, and brackets omitted.) Thus, to determine whether Plaintiffs’ malicious

 prosecution claim against Defendants Johnson, Bellamy, and Hastings in their
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 official capacities is barred under the doctrine of government immunity, we must first

 determine whether Defendants Johnson, Bellamy, and Hastings acted with malice.

¶ 53 “In order to give a cause of action for malicious prosecution, such prosecution

 must have been maliciously instituted.” Cook, 267 N.C. at 170, 147 S.E.2d at 914

 (citations omitted). “ ‘Malice’ in a malicious prosecution claim may be shown by

 offering evidence that defendant ‘was motivated by personal spite and a desire for

 revenge’ or that defendant acted with ‘ “reckless and wanton disregard” ’ for plaintiffs’

 rights.” Becker, 168 N.C. App. at 676, 608 S.E.2d at 829 (citation omitted); see also

 Moore v. City of Creedmoor, 345 N.C. 356, 371, 481 S.E.2d 14, 24 (1997) (citation

 omitted).

¶ 54 Plaintiffs must “offer evidence tending to prove that the wrongful action of

 instituting the prosecution was done for actual malice in the sense of personal ill-will,

 or under the circumstances of insult, rudeness or oppression, or in a manner which

 showed the reckless and wanton disregard of [Plaintiffs’] rights.” Mathis v. Dowling,

 230 N.C. App. 311, 316, 749 S.E.2d 284, 288 (2013) (citation omitted). “In an action

 for malicious prosecution, the malice element may be satisfied by a showing of either

 actual or implied malice. Implied malice may be inferred from want of probable cause

 in reckless disregard of the plaintiff's rights.” Kirschbaum v. McLaurin Parking Co.,

 188 N.C. App. 782, 789-90, 656 S.E.2d 683, 688 (2008) (quoting Nguyen v.

 Burgerbusters, Inc., 182 N.C. App. 447, 452, 642 S.E.2d 502, 506-07 (2007)).
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 Evidence that the chief aim of the prosecution was to
 accomplish some collateral purpose, or to forward some
 private interest, e.g., to enforce collection of a debt is
 admissible both to show the absence of probable cause and
 to create an inference of malice, and such evidence is
 sufficient to establish a prima facie want of probable cause.

 Cook, 267 N.C. at 170, 147 S.E.2d at 914 (citation, internal ellipses, and alteration

 omitted).

¶ 55 Here, Plaintiffs contend Defendants Johnson, Bellamy, and Hastings acted

 with ill-will by “with[holding] exculpatory evidence from the SBI in an effort to incite

 criminal charges against Plaintiffs”; “destroy[ing] exculpatory evidence”;

 “manipulating the ‘black book’ by providing a modified version to the SBI”; and

 providing false or misleading statements to the SBI, media, and to fellow law

 enforcement officers.

¶ 56 A review of the record, however, demonstrates that Plaintiffs lack specific

 knowledge of what information Defendants Johnson, Bellamy, and Hastings provided

 to the SBI. Specifically, Sanders conceded in his deposition that he had “no personal

 knowledge of any discussion or conversation any defendant had with anyone at the

 SBI,” other than reading through their SBI interviews “after the fact.” Sanders

 further conceded that he “had no personal knowledge of any of these defendants”

 instructing other law enforcement officers “not to provide information to the SBI.”

 Assuming arguendo that there were inconsistencies in Defendants Johnson, Bellamy,
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 and Hastings’s SBI, IA, and RMA interviews, Plaintiffs failed to establish these

 inconsistencies were intentional and not mere misstatements over the course of an

 approximately two-year long investigation.

¶ 57 Further, Plaintiffs thought Chief Wray was “the real target of the SBI’s

 investigation.” Fox testified during his deposition that he had “very little contact,”

 with Defendants Bellamy and Hastings. Fox conceded that he did not believe “the

 charges were personal against [him,]” but that the charges “were just a means to an

 end.” Further, Fox stated his belief that Defendant Hastings’s “actions or motivation

 was prompted by [Defendant Hastings’s] relationship with Wray.” Moreover,

 Defendant Hastings testified in Sanders’s criminal trial, and was found to be “a

 helpful witness” for Sanders.

¶ 58 Notably, Plaintiffs do not argue the actions taken by Defendants Johnson,

 Bellamy, and Hastings were against departmental policy or standard procedure

 where there are concerns of racial and criminal misconduct within a police

 department. While Plaintiffs take issue with their suspension; a “gag order,” that

 prevented them from speaking about their pending criminal charges; and statements

 made during several investigations, Plaintiffs do not argue this was an unusual

 response to public concerns of corruption and racial misconduct. Because Plaintiffs

 failed to show any statement was made maliciously, “in the sense of personal ill-will,”

 we find Plaintiffs’ malicious prosecution claim against Defendants Johnson, Bellamy,
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 and Hastings in their official capacities is barred by the doctrine of governmental

 immunity.

 2. Probable Cause

¶ 59 “Where the claim is one for malicious prosecution, probable cause has been

 properly defined as the existence of such facts and circumstances, known to the

 defendants at the time, as would induce a reasonable man to commence a

 prosecution.” Best, 337 N.C. at 749, 448 S.E.2d at 510 (internal quotation marks,

 alterations, and citations omitted); see also Cook, 267 N.C. at 170, 147 S.E.2d at 914

 (citation omitted). “Whether probable cause exists is a mixed question of law and

 fact,” however, “the existence of probable cause is a question of law for the court.”

 Best, 337 N.C. at 750, 448 S.E.2d at 510 (citing Cook, 367 N.C. at 171, 147 S.E.2d at

 914).

¶ 60 To determine probable cause, we must consider “whether a man of ordinary

 prudence and intelligence under the circumstance would have known that the charge

 had no reasonable foundation.” Wilson v. Pearce, 105 N.C. App. 107, 113-14, 412

 S.E.2d 148, 151 (1992) (citation omitted). “The critical time for determining whether

 or not probable cause existed is when the prosecution begins.” Hill v. Winn-Dixie

 Charlotte, Inc., 100 N.C. App. 518, 521, 397 S.E.2d 347, 349 (1990) (citation omitted).

 The existence of probable cause will defeat a malicious prosecution claim. Adams v.

 City of Raleigh, 245 N.C. App. 330, 335, 782 S.E.2d 108, 113 (2016). “Probable cause
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 does not demand any showing that such a belief be correct or more likely true than

 false. A practical, nontechnical probability that incriminating evidence is involved is

 all that is required.” Id. at 337, 782 S.E.2d at 114 (internal quotation marks and

 citation omitted). “A probability of illegal activity . . . is sufficient.” Id. (citation

 omitted).

¶ 61 Here, there was substantial evidence to support a “probability” that Sanders

 had impermissibly accessed a government computer. While Plaintiffs contend all

 Defendants provided false and misleading information during the SBI investigation,

 Plaintiffs do not contest Cullop’s assertions that Sanders asked Cullop to make a

 “mirror copy” of a laptop computer. Nor do Plaintiffs argue Cullop’s notes regarding

 the serial number of the laptop he examined are inaccurate. Further, the HUD agent

 that allowed Fulmore to use the laptop in question made several statements to the

 SBI regarding Sanders’s requests to access Fulmore’s computer. Moreover, Sanders

 conceded in his IA interview that he “placed [a] monitoring device[]” on a city

 computer. Sanders further stated he put a “key-catcher” device on two officers’

 computers, in order to capture these officers’ usernames and passwords.

¶ 62 There was also evidence presented that would lead “a man of ordinary

 prudence and intelligence” to believe Plaintiffs obstructed justice and conspired to do

 so. Defendant Slone stated in his SBI interview Sanders had instructed him not to

 provide certain evidence to Defendant Rankin during a meeting between Defendant
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 Slone and Plaintiffs. While Plaintiffs argue this statement was false, misleading, and

 inconsistent with Defendant Slone’s statements during the IA and RMA

 investigations, Hill corroborated Defendant Slone’s statements. Hill recounted the

 meeting he attended with Defendant Slone and two detectives. “Hill related that

 [Defendant Slone] was trying to give the other detectives some information he had

 obtained,” but the detectives “did not want it because if they took the information,

 they would have to give it to whoever was working on some case.” Hill recalled the

 information Defendant Slone was trying to give to the detectives “was supposed to be

 a picture of a police officer with a stripper or someone else.”

¶ 63 Defendant Slone and Hill’s statements to the SBI are further corroborated by

 Defendant Rankin’s interview. Defendant Rankin was assigned to investigate

 allegations of police officers soliciting prostitutes. After Defendant Rankin received

 his assignment, he thought “it was like an invisible wall was being put up to keep

 him from talking to” an informant. Later, Defendant Slone admitted he was asked

 to “lead [Defendants] Rankin and Cuthbertson in the wrong direction and give them

 false information to keep them from ever meeting with the informant.”

¶ 64 Based upon Defendants Slone and Rankin’s statements to the SBI,

 corroborated in part by Hill, “a reasonable and prudent man, under the

 circumstances” would believe the obstruction of justice charge was not without a

 foundation. Our review reveals Plaintiffs failed to meet their burden to show that
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 Defendants Johnson, Bellamy, and Hastings acted with malice or without probable

 cause. We hold the trial court did not err by granting summary judgment with

 respect to Plaintiffs’ malicious prosecution cause of action.

 B. Motion to Dismiss

¶ 65 Plaintiffs contend that the trial court erred in granting Defendants’ motions to

 dismiss their civil conspiracy and abuse of process claims. We review an order

 granting a motion to dismiss de novo. S.N.R. Mgmt. Corp. v. Danube Partners, 141,

 LLC, 189 N.C. App. 601, 606, 659 S.E.2d 442, 447 (2008). We consider “whether the

 complaint states a claim for which relief can be granted under some legal theory when

 the complaint is liberally construed and all the allegations included therein are taken

 as true.” Chidnese v. Chidnese, 210 N.C. App. 299, 304, 708 S.E.2d 725, 730 (2011).

¶ 66 As a preliminary matter, we note, “North Carolina is a notice pleading state.”

 White v. Trew, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (citation omitted).

 Under the “notice theory of pleading” a statement of claim
 is adequate if it gives sufficient notice of the claim asserted
 “to enable the adverse party to answer and prepare for
 trial, to allow for the application of the doctrine res
 judicata, and to show the type of case brought.”

 Sutton v. Duke, 277 N.C. 94, 102, 176 S.E.2d 161, 165 (1970) (citation and internal

 alteration omitted); see also Hill v. Perkins, 84 N.C. App. 644, 647, 353 S.E.2d 686,

 688 (1987). Under our State’s notice theory of pleading, plaintiffs must allege facts,

 not mere conclusions, to support their asserted causes of action. See Sutton, 277 N.C.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 at 98-99, 176 S.E.2d at 163. “While the concept of notice pleading is liberal in nature,

 a complaint must nonetheless state enough to give the substantive elements of a

 legally recognized claim or it may be dismissed under Rule 12(b)(6).” Raritan River

 Steel Co. v. Cherry, Bekart, & Holland, 322 N.C. 200, 205, 367 S.E.2d 609, 612 (1988)

 (citation omitted). However, “if a complaint pleads facts which serve to defeat the

 claim it should be dismissed.” Id. (citing Sutton, 277 N.C. at 102, 176 S.E.2d at 166).

 3. Civil Conspiracy

¶ 67 Plaintiffs contend the trial court erred in dismissing their civil conspiracy

 cause of action against Defendants Johnson, Bellamy, Hastings, Kelly, Slone, Rankin,

 and Cuthbertson. Specifically, Plaintiffs contend they sufficiently alleged the cause

 of action under Rule 8 of our rules of civil procedure. See N.C. Gen. Stat. § 1A-1, Rule

 8(a) (2021). All Defendants contend that if Plaintiffs sufficiently pled factual

 allegations to survive a motion to dismiss, Plaintiffs’ civil conspiracy claim is barred

 by the doctrines of intra-corporate or government immunity.

¶ 68 We note “that there is not a separate civil action for civil conspiracy in North

 Carolina.” Dove v. Harvey, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005) (citing

 Shope v. Boyer, 268 N.C. 401, 404-05, 150 S.E.2d 771, 773-74 (1966); Fox v. Wilson,

 85 N.C. App. 292, 300, 354 S.E.2d 737, 742-43 (1987)).

 In civil conspiracy, recovery must be on the basis of
 sufficiently alleged wrongful overt acts. The charge of
 conspiracy itself does nothing more than associate the
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 defendants together and perhaps liberalize the rules of
 evidence to the extent that under proper circumstances the
 acts and conduct of one might be admissible against all.

Shope, 268 N.C. at 405, 150 S.E.2d at 773-74 (citation omitted); Fox, 85 N.C. App. at

301, 354 S.E.2d at 743 (citation and quotation marks omitted); see also Dickens v.

Puryear, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981) (“The common law action for

civil conspiracy is for damages caused by acts committed pursuant to a conspiracy

rather than for the conspiracy, i.e., the agreement, itself.” (citation and internal

alteration omitted)).

 A threshold requirement in any cause of action for damages
 caused by acts committed pursuant to a conspiracy must
 be the showing that a conspiracy in fact existed. The
 existence of a conspiracy requires proof of an agreement
 between two or more persons. Although civil liability for
 conspiracy may be established by circumstantial evidence,
 the evidence of the agreement must be sufficient to create
 more than a suspicion or conjecture in order to justify
 submission to a jury.

Dove, 168 N.C. App. at 690-91, 608 S.E.2d at 801 (internal citations and quotation

marks omitted). “Thus to create civil liability for conspiracy,” Dickens, 302 N.C. at

456, 276 S.E.2d at 357, the Plaintiffs must have alleged “(1) an agreement between

two or more individuals; (2) to do an unlawful act or to do an lawful act in an unlawful

way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators;

and (4) pursuant to a common scheme.” Privette v. Univ. of North Carolina, 96 N.C.

App. 124, 139, 385 S.E.2d 185, 193 (1989) (citation omitted); see also Elliott v. Elliott,
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 200 N.C. App. 259, 264, 683 S.E.2d 405, 409 (2009). Circumstantial evidence may be

 used to prove the existence of an agreement; however, “the evidence of the agreement

 must be sufficient to create more than a suspicion or conjecture in order to justify

 submission of the issue to a jury.” Dickens, 302 N.C. at 456, 276 S.E.2d at 337 (citing

 Edwards v. Ashcraft, 201 N.C. 246, 159 S.E. 355 (1931). See also State v. Martin, 191

 N.C. 404, 132 S.E. 16 (1926)).

¶ 69 “We must judge the sufficiency of the complaint by the facts alleged and not by

 the pleader’s conclusions. . . . The repeated use of the words combined, conspired, and

 agreed together to injure [Plaintiffs] . . . [are] insufficient.” Shope, 268 N.C. at 405,

 150 S.E.2d at 774 (internal citation omitted). Recovery, in the context of a civil

 conspiracy claim, “must be on the basis of [the sufficiency] of [the] alleged wrongful

 overt acts.” Dove, 168 N.C. App. at 690, 608 S.E.2d at 800 (citation omitted).

¶ 70 Here, Plaintiffs’ “claims [are] essentially derived from allegations that

 [Defendants] knowingly gave false information” to the RMA and SBI. See Hawkins

 v. Webster, 78 N.C. App. 589, 590, 337 S.E.2d 682, 683 (1985). This Court, however,

 has previously held that “[a] civil action may not be maintained for a conspiracy to

 give false testimony.” Id. at 592, 337 S.E.2d at 684 (citation omitted). In Hawkins,

 this Court affirmed the dismissal of a civil conspiracy claim where the plaintiff

 alleged “defendants knowingly gave false information to the FBI and IRS agents who

 conducted the investigation that resulted in criminal charges being filed against [the
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 plaintiff].” Id. at 590, 337 S.E.2d at 683. Similarly, this Court declined to find a civil

 conspiracy cause of action where a plaintiff alleged “the Defendants conspired

 together to commit the unlawful acts of having Plaintiffs falsely arrested and

 assert[ed] that Defendants ‘knowingly provid[ed] false and misleading affidavits and

 other false information in order to secure the issuance of [] bogus arrest warrants.”

 Strickland, 194 N.C. App. at 19, 669 S.E.2d at 72-73 (internal quotation marks

 omitted).

¶ 71 Moreover, Plaintiffs failed to allege any specific factual allegations about the

 purported conspiracy. Plaintiffs’ complaint is devoid of any factual allegations

 regarding a meeting or agreement between all Defendants. While Plaintiffs pleaded

 all Defendants “reached an agreement,” and “agreed to gather information,” such

 claims constitute mere conclusions regarding an alleged agreement. See Shope, 268

 N.C. at 405, 150 S.E.2d at 774. The complaint is devoid of any factual allegations

 regarding how or when all Defendants reached such an agreement.

¶ 72 Viewing Plaintiffs’ complaint in light of our precedent, “a conspiracy to provide

 false [statements] in order to secure Plaintiffs’ arrest . . . is not recognized in North

 Carolina.” Strickland, 194 N.C. App. at 19, 669 S.E.2d at 73. Therefore, the trial

 court did not err when it dismissed Plaintiffs’ civil conspiracy cause of action. As

 Plaintiffs failed to sufficiently plead factual allegations to support their claim of civil

 conspiracy, we need not address whether Plaintiffs’ claim is barred by the affirmative
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 defenses of intra-corporate immunity or government immunity.

 C. Abuse of Process

¶ 73 Next, Plaintiffs contend the trial court erred in dismissing their abuse of

 process claim asserted against Defendants Johnson, Bellamy, and Hastings. The

 trial court’s order dismissing Plaintiffs’ claim for abuse of process does not provide its

 reasoning for granting the motion to dismiss. On appeal, however, Plaintiffs first

 address whether their claim was barred by the applicable statute of limitations. The

 parties dispute whether Plaintiffs preserved any remaining arguments regarding the

 sufficiency of their pleadings with respect to this cause of action.

 1. Statute of Limitations

¶ 74 Plaintiffs first contend their abuse of process claim is not barred by the

 applicable statute of limitations because the limitations period commences upon “the

 termination of the acts which constitute the abuse complained of.” See 1 AM.JUR.2d,

 Abuse of Process, § 27. Because to support a claim of abuse of process, Plaintiffs must

 sufficiently plead acts that occur after the institution of the process, we conclude that

 the limitations period commences upon the last tortious act about which Plaintiffs

 complained.

 Statutes of limitations are inflexible and unyielding. They
 operate inexorably without reference to the merits of
 plaintiff’s cause of action. They are statutes of repose,
 intended to require that litigation be initiated within the
 prescribed time or not at all.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 The purpose of a statute of limitations is to afford security
 against stale demands, not to deprive anyone of his just
 rights by lapse of time. In some instances, it may operate
 to bar the maintenance of meritorious causes of action.
 When confronted with such a cause, the urge is strong to
 write into the statute exceptions that do not appear
 therein. In such case, we must bear in mind Lord
 Campbell’s caution: Hard cases must not make bad law.

 Congleton v. City of Asheboro, 8 N.C. App. 571, 573-74, 174 S.E.2d 870, 872 (1970)

 (internal quotation marks and citations omitted).

¶ 75 Abuse of process is an intentional tort, and the tort of abuse of process has a

 three-year limitations period. See Barnette v. Woody, 242 N.C. 424, 431, 88 S.E.2d

 223, 227 (1955) (citation omitted); see also Cox v. Jefferson-Pilot, 80 N.C. App. 122,

 124, 341 S.E.2d 608, 610 (1986). “Ordinarily, the period of the statute of limitations

 begins to run when the plaintiff’s right to maintain an action for the wrong alleged

 accrues.” Rafferty v. Wm. C. Vick Constr. Co., 291 N.C. 184, 184, 230 S.E.2d 405, 407

 (1976) (internal quotation marks, citation, and emphasis omitted). “[A] cause of

 action accrues to an injured party so as to start the running of the statute of

 limitations when he is at liberty to sue . . . .” Id. at 182, 230 S.E.2d at 407 (citation

 omitted).

¶ 76 Plaintiffs, relying on secondary sources and Barnette v. Woody, argue the

 applicable limitations period commenced upon “the termination of the acts which

 constitute the abuse complained of.” See 1 AM.JUR.2d, Abuse of Process, § 27 (1994);
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 see also J.A. Brock, Annotation, When the Statute of Limitations Begins to Run

 Against Action for Abuse of Process, 1 A.L.R.3d 953 (2016). In Barnette, the plaintiff

 alleged the defendant conspired “to procure the admission of the plaintiff to the State

 Hospital.” 242 N.C. at 426, 88 S.E.2d at 224. The plaintiff was committed to the State

 Hospital on March 21, 1950 and was released on June 8, 1950. Id. The plaintiff

 brought a civil action seeking punitive and actual damages, but it was not clear

 “whether [the plaintiff] is seeking to recover on an action for malicious prosecution,

 abuse of process, or for false imprisonment.” Id. at 430, 88 S.E.2d at 227. Our

 Supreme Court proceeded to apply a three-year statute of limitations from the date

 of the plaintiff’s release from a state hospital. Id. at 431, 88 S.E.2d at 227 (“Hence,

 the three-year statute of limitations pleaded by the defendants, G.S. § 1-52, would

 not be a bar to an action for malicious prosecution or abuse of process.”).

¶ 77 Plaintiffs contend Barnette supports the proposition that the applicable

 statute of limitations commenced when the claim for abuse of process accrued, that

 is, upon the last tortious act after process was instituted. We agree.

¶ 78 Defendants Johnson, Bellamy, and Hastings argue Plaintiffs’ claim accrued

 upon their arrest on September 21, 2007, and thus, is time barred. Defendants

 Johnson, Bellamy, and Hastings rely on Cox v. City of Jefferson-Pilot to argue

 Plaintiffs’ claim accrued upon their arrest date. In Cox, the dispositive issue was

 whether the plaintiff was mentally competent to enter into a general release of
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 liability. See Cox, 80 N.C. App. at 124-25, 341 S.E.2d at 610. The plaintiff argued he

 was mentally incompetent at the time he executed a release of liability and, thus, the

 statute of limitations was tolled during his incompetency. Id. The plaintiff’s wife had

 previously been arrested for embezzling approximately $152,000.00 from her

 employer. Id. at 122, 341 S.E.2d at 609. The plaintiff was subsequently arrested and

 jailed for approximately two weeks. Id. After the plaintiff’s arrest, his wife’s

 employer and its insurance company filed a civil suit against the plaintiff and his

 wife, attaching the couple’s property. Id. at 123, 341 S.E.2d at 609. The civil suit

 was settled by a consent judgment, signed by both the plaintiff and his wife. Id.

 Thereafter, on September 26, 1978, the plaintiff executed a release of liability in favor

 of the employer and insurance company. Id.

¶ 79 In 1983, the plaintiff filed a civil action in which he did not specify a cause of

 action but alleged his wife’s employer and its insurance company wrongfully initiated

 his arrest and the seizure of his property. Id. The plaintiff further alleged he was

 mentally incompetent at the time he executed the release. Id. On appeal, he asserted

 he sufficiently pleaded an abuse of process claim. Id. at 124, 341 S.E.2d at 610. This

 Court found the plaintiff was mentally competent at the time he entered into a

 general release of liability. Id. at 126, 341 S.E.2d at 611. As such, the limitations

 period was not tolled, and Plaintiff’s abuse of process cause of action was time barred.

 Id. at 128, 341 S.E.2d at 612.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

¶ 80 Here, in contrast, Plaintiffs did not execute a release of liability in favor of any

 named defendant. Instead, Plaintiffs “pleaded continuing tortious acts after the

 arrest date,” the last of which concluded upon the dismissal of all remaining charges

 against Plaintiffs on February 23, 2009. These acts include Defendants Johnson,

 Bellamy, and Hastings’s purported failure to provide exculpatory information during

 the course of the investigations and Sanders’ criminal trial; and the continuous use

 of the pending criminal prosecution of Sanders and Fox “in an attempt to elicit

 information from Fox and Sanders,” and force them out of the GPD. Thus, the statute

 of limitations for Plaintiffs’ abuse of process cause of action did not run until February

 23, 2012, three years after the termination of the last alleged act of abuse of process

 of which the Plaintiffs complained.

¶ 81 While our dissenting colleague proposes that we conclude the limitations

 period commenced upon the institution of the process, to do so would muddle the

 distinction between the claims of malicious prosecution and abuse of process and

 would ignore precedent establishing an improper act after the initiation of the process

 as an essential element of a colorable abuse of process claim. See Chidnese, 210 N.C.

 App. at 304, 708 S.E.2d at 731; see also Fox v. Barrett, 90 N.C. App. 135, 138, 367

 S.E.2d 412, 414 (1988) (affirming the dismissal of an abuse of process cause of action

 where the plaintiff failed to allege “any improper act by defendant occurring

 subsequent to the initiation of the prior lawsuit.” (emphasis in original)).
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 2. Sufficiency of the Pleadings

¶ 82 Plaintiffs further contend they sufficiently pleaded actions by Defendants

 Johnson, Bellamy, and Hastings that arose to abuse of process.10 We agree.

 Protection against wrongful litigation is afforded by a
 cause of action for either abuse of process or malicious
 prosecution. The legal theories underlying the two actions
 parallel one another to a substantial degree, and often the
 facts of a case would support a claim under either theory.
 The distinction between an action for malicious
 prosecution and one for abuse of process is that malicious
 prosecution is based upon malice in causing the process to
 issue, while abuse of process lies for its improper use after
 it has been issued.

 Chidnese, 210 N.C. App. at 304, 708 S.E.2d at 731 (citations and internal quotation

 marks omitted). “Abuse of process is the misuse of legal process for an ulterior

 purpose. It consists in the malicious misuse or misapplication of that process . . . to

 accomplish some purpose not warranted or commended by the writ.” Fowle v. Fowle,

 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965) (citations omitted); see also Melton v.

 Rickman, 225 N.C. 700, 703, 36 S.E.2d 276, 278 (1945) (“[M]alicious prosecution is

 the prosecution with malice and without probable cause, abuse of process is the

 misuse of legal process for an ulterior purpose.”). Thus, the distinction between

 10 Defendants Johnson, Bellamy, and Hastings contend this argument is not preserved

 for appellate review, see N.C. R. App. P. 28(a), because Plaintiffs’ “abuse of process argument
 in their principal appellants concerns only the statute of limitations.” (emphasis in original).
 However, in their appellate brief, Plaintiffs argue several alleged acts by Defendants
 Johnson, Bellamy, and Hastings constitute tortious acts for an abuse of process cause of
 action.
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 malicious prosecution and abuse of process is that malicious prosecution requires a

 claim to be improperly instituted, whereas abuse of process requires a wrongful or

 improper act after the institution of process. Chidnese, 210 N.C. App. at 304, 708

 S.E.2d at 731 (citations omitted); see also Fox, 90 N.C. App. at 138, 367 S.E.2d at 414.

¶ 83 “Abuse of process requires both an ulterior motive and an [improper] act in the

 use of the legal process . . . [during] the regular prosecution of the proceeding, and

 that both . . . relate to . . . defendant’s purpose to achieve . . . [using] the process some

 end foreign to those it was designed to effect.” Fuhs v. Fuhs, 245 N.C. App. 367, 375,

 782 S.E.2d 385, 390 (2016) (citation and emphasis omitted); see also Klander v. West,

 205 N.C. 524, 529, 171 S.E.2d 782, 783 (1933) (recognizing “the two essential

 elements are the existence of an ulterior purpose and an act in the use of the process

 not proper in the regular prosecution of the proceeding”). The “ulterior motive”

 requirement for an abuse of process claim is satisfied “when the plaintiff alleges that

 the prior action was initiated by defendant or used by him to achieve a collateral

 purpose not within the normal scope of the process used.” Fuhs, 245 N.C. App. at

 375, 782 S.E.2d at 390 (citation omitted). “The act requirement is satisfied when the

 plaintiff alleges that once the prior proceeding was initiated, the defendant committed

 some willful act whereby he sought to use the existence of the proceeding to gain

 advantage of the plaintiff in respect to some collateral matter.” Id. (emphasis added).

¶ 84 Defendants Johnson, Bellamy, and Hastings contend Plaintiffs’ claim must fail
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 as Plaintiffs did not plead any improper act by these Defendants after Plaintiffs’

 indictment. See Fox, 90 N.C. App. at 138, 367 S.E.2d at 414 (affirming the dismissal

 of an abuse of process cause of action where the plaintiff failed to allege “any improper

 act by defendant occurring subsequent to the initiation of the prior lawsuit.”

 (emphasis in original)); see also Hewes v. Wolfe, 74 N.C. App. 610, 610-13, 330 S.E.2d

 16, 18-20 (1985) (affirming the denial of a motion to dismiss the plaintiff’s abuse of

 process cause of action where defendant brought an earlier civil action for the

 misappropriation of partnership assets and subsequently filed a notice of lis pendens

 on the plaintiff’s property). “[T]he gravamen of a cause of action for abuse of process

 is the improper use of the process after it has been issued.” Chidnese, 210 N.C. App.

 at 311, 708 S.E.2d at 735 (citation omitted) (emphasis in original).

¶ 85 In the instant case, Plaintiffs alleged

 73. Defendants Johnson, Bellamy, . . . and Hastings, acting
 in their official capacities as duly assigned agents of the
 City of Greensboro, and the City of Greensboro willfully
 and maliciously took actions in the use of the legal process
 that were not proper in the regular prosecution of the
 proceeding by, inter alia,

 i. Using the threat of prosecution, and the
 proceeding itself, as leverage against Fox and Sanders in
 an attempt to elicit information from Fox and Sanders;

 ii. Using the threat of prosecution, and the
 proceeding itself, as leverage to pressure Fox and Sanders
 out of the [GPD]; and

 iii. Failing to produce exculpatory information with
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

 respect to the charges against Fox and Sanders despite
 defendants’ affirmative duty to provide said information.
 Defendants were charged with an affirmative duty to
 provide said information due to:

 1. The fiduciary relationship between the
 defendants and Fox and Sanders;

 2. The defendants’ involvement in the initiation of
 the investigation of Fox and Sanders; and

 3. The defendant’s involvement in the investigation
 of Fox and Sanders.

 74. Defendants Johnson, Bellamy, . . . Hastings, and the
 City of Greensboro acted with an ulterior motive or purpose
 by taking the aforementioned actions for the purposes of
 discrediting former Chief of Police David Wray, advancing
 the defendants’ own careers, and for the purpose of
 appeasing a segment of the African American community.

While Defendants Johnson, Bellamy, and Hastings are correct in that Plaintiffs must

allege acts after the initiation of the proceeding, Plaintiffs satisfied this requirement

by pleading Defendants Johnson, Bellamy, and Hastings failed to produce

exculpatory information during the investigation of Plaintiffs and Sanders’

subsequent criminal trial.11

 11 While the record on appeal reveals Defendant Hastings testified on Sanders’s behalf

during Sanders’s trial for impermissibly accessing a government computer, we do not
consider this fact in our analysis. Plaintiffs’ abuse of process claim was dismissed on August
13, 2012. In reviewing the grant of a motion to dismiss, we consider “whether the complaint
states a claim for which relief can be granted under some legal theory when the complaint is
liberally construed and all the allegations included therein are taken as true.” Chidnese, 210
N.C. App. at 304, 708 S.E.2d at 730 (emphasis added) (citation omitted).
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

¶ 86 Additionally, Plaintiffs asserted allegations that Defendants Johnson,

 Bellamy, and Hastings “acted with an ulterior motive” by failing to produce such

 information in order to gain “leverage to pressure Fox and Sanders out of the [GPD],”

 and “in an attempt to elicit information from Fox and Sanders.” These acts constitute

 continuous actions by Defendants Johnson, Bellamy, and Hastings, as the duty to

 provide exculpatory information arose during the investigation of the Wray

 administration and did not cease until Plaintiffs were no longer under the threat of

 criminal prosecution. Because Plaintiffs sufficiently alleged Defendants Johnson,

 Bellamy, and Hastings acted with an ulterior motive, we hold the trial court erred in

 dismissing Plaintiffs’ abuse of process claim. See Hewes v. Wolfe, 74 N.C. App. 610,

 614, 330 S.E.2d 16, 19 (1985) (finding allegations the defendant acted “for the purpose

 of injuring and destroying the credit business of the plaintiffs and in general to

 oppress the plaintiffs[]” sufficient to survive a motion to dismiss). Accordingly, we

 reverse the trial court’s order with respect to this cause of action, and remand for

 further proceedings.

 III. Conclusion

¶ 87 After careful review, we hold the trial court did not err by dismissing Plaintiffs’

 civil conspiracy claim against all Defendants. Nor did the trial court err in granting

 summary judgment with respect to Plaintiffs’ malicious prosecution claim against

 Defendants Johnson, Bellamy, and Hastings. However, the trial court erred in
 FOX V. JOHNSON

 2021-NCCOA-489

 Opinion of the Court

dismissing Plaintiffs’ abuse of process cause of action, as the claim was not time

barred and Plaintiffs sufficiently pleaded facts to support their claim. Accordingly,

we affirm in part, reverse in part, and remand to the trial court for further

proceedings not inconsistent with this opinion.

 AFFIRMED IN PART; REVERSED IN PART; REMANDED.

 Judge ZACHARY concurs.

 Judge JACKSON concurs in part and dissents in part by separate opinion.
 No. COA20-438 – Fox v. Johnson

 JACKSON, Judge, concurring in part and dissenting in part.

¶ 88 I concur in part, joining the majority opinion except for the portion holding that

 the statute of limitations for Plaintiffs’ abuse of process claim had not run until 23

 February 2012. In my view, the allegations pleaded in the fourth count of Plaintiffs’

 complaint allege two separate abuse of process claims: (1) for the threat and initiation

 of criminal proceedings against Plaintiffs in September 2007; and (2) for alleged

 violations of Brady v. Maryland, 373 U.S. 83 (1963), in the trial of Plaintiff Sanders,

 while Plaintiff Fox was awaiting trial.

¶ 89 With respect to the first claim, I would hold that the statute of limitations had

 run on 17 September 2010—three years after Plaintiffs were indicted on these

 charges in Guilford County Superior Court. I would therefore affirm the trial court’s

 grant of the motion to dismiss this claim because it was tolled until 20 September

 2011, and Plaintiffs did not initiate this action until January 2012—well after

 September 2010, when the three-year statute of limitations had run, and several

 months after the September 2011 re-filing deadline, when the tolling period had

 expired.12

 12 On 23 March 2010, Plaintiffs filed a federal lawsuit asserting this claim.
 Fox v. City
 of Greensboro, 807 F. Supp.2d 476, 480 (M.D.N.C. 2011). Under 28 U.S.C. § 1367(d), it was
 tolled during the pendency of the federal case until 30 days after 27 August 2011, when the
 case was dismissed. See 28 U.S.C. § 1367(d) (2019) (providing for tolling of state law claims
 brought in federal court “while the claim is pending and for a period of 30 days after it is
 dismissed unless State law provides for a longer tolling period”); Fox, 807 F. Supp.2d at 500-
 01 (dismissing Plaintiffs’ state law claims without prejudice).
 FOX V. JOHNSON

 2021-NCCOA-489

 JACKSON, J., concurring in part and dissenting in part

¶ 90 With respect to the second claim, however, I would hold that the allegations in

 the complaint fail to demonstrate whether or when the claim for abuse of process

 because of the Brady violation accrued. I would therefore vacate the trial court’s

 order granting the motion to dismiss in part and remand the case to the trial court

 for further proceedings on this claim. Accordingly, I respectfully dissent from the

 portion of the majority opinion related to the statute of limitations on Plaintiffs’ abuse

 of process claim(s).

 IV. Standard of Review

 The standard of review of an order granting a 12(b)(6)
 motion is whether the complaint states a claim for which
 relief can be granted under some legal theory when the
 complaint is liberally construed and all the allegations
 included therein are taken as true. On a motion to dismiss,
 the complaint’s material factual allegations are taken as
 true. Dismissal is proper when one of the following three
 conditions is satisfied: (1) the complaint on its face reveals
 that no law supports the plaintiff’s claim; (2) the complaint
 on its face reveals the absence of facts sufficient to make a
 good claim; or (3) the complaint discloses some fact that
 necessarily defeats the plaintiff’s claim. On appeal of a
 12(b)(6) motion to dismiss, this Court conducts a de novo
 review of the pleadings to determine their legal sufficiency
 and to determine whether the trial court’s ruling on the
 motion to dismiss was correct.

 Burgin v. Owen, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428-29 (2007) (internal

 marks and citations omitted).

 V. Analysis
 FOX V. JOHNSON

 2021-NCCOA-489

 JACKSON, J., concurring in part and dissenting in part

 D. Abuse of Process Compared to Malicious Prosecution

¶ 91 “The distinction between an action for malicious prosecution and one for abuse

 of process is that malicious prosecution is based upon malice in causing [] process to

 issue, while abuse of process lies for its improper use after it has been issued.”

 Barnette v. Woody, 242 N.C. 424, 431, 88 S.E.2d 223, 227 (1955). Whereas “[i]n an

 action for malicious prosecution the plaintiff must prove malice, want of probable

 cause and termination of the prosecution or proceeding in plaintiff’s favor[,] . . . the

 only essential elements of abuse of process are[] . . . the existence of an ulterior

 purpose and . . . an act in the use of the process not proper in the regular prosecution

 of the proceeding.” Id., 88 S.E.2d at 227-28 (citations omitted). Thus, while a claim

 of malicious prosecution requires a showing that “the defendant (1) initiated or

 participated in the earlier proceeding, (2) did so maliciously, (3) without probable

 cause, and (4) the earlier proceeding ended in favor of the plaintiff[,]” Turner v.

 Thomas, 369 N.C. 419, 425, 794 S.E.2d 439, 444 (2016) (citation omitted), in an action

 for abuse of process, the plaintiff need only show “(1) that the defendant had an

 ulterior motive to achieve a collateral purpose not within the normal scope of the

 process used, and (2) that the defendant committed some act that is a malicious

 misuse or misapplication of that process after issuance to accomplish some purpose

 not warranted or commanded by the writ[,]” Pinewood Homes, Inc. v. Harris, 184 N.C.

 App. 597, 602, 646 S.E.2d 826, 831 (2007) (internal marks and citation omitted).
 FOX V. JOHNSON

 2021-NCCOA-489

 JACKSON, J., concurring in part and dissenting in part

 Accordingly, unlike an action for malicious prosecution, which can only be brought

 after a prior proceeding terminates in the plaintiff’s favor, Turner, 369 N.C. at 425,

 794 S.E.2d at 444, an action for abuse of process can be commenced as soon as the

 process at issue is filed or interposed, see e.g., Hewes v. Wolfe, 74 N.C. App. 610, 614,

 330 S.E.2d 16, 19 (1985) (holding that assertion of a claim for abuse of process was

 proper once the defendants “filed notices of lis pendens and notices of lien on property

 owned by [the] plaintiffs”).

 E. When the Statute of Limitations Begins to Run

¶ 92 Generally speaking, “a cause of action accrues [] and the statute of limitations

 begins to run as soon as the right to institute and maintain a suit arises.” Penley v.

 Penley, 314 N.C. 1, 20, 332 S.E.2d 51, 62 (1985) (citations omitted). Application of

 this general rule to a claim for abuse of process suggests that the statute of limitations

 for abuse of process begins to run as soon as the plaintiff’s cause of action accrues,

 i.e., upon the filing or interposition of the allegedly abusive process. Cf. Hewes, 74

 N.C. App. at 614, 330 S.E.2d at 19. Yet the question of when the three-year statute

 of limitations begins to run appears unsettled under North Carolina law, as the

 parties’ divergent positions and the authority cited in support of these positions

 illustrates.

¶ 93 Plaintiffs cite our Supreme Court’s decision in Barnette v. Woody, 242 N.C. 424,

 88 S.E.2d 223 (1955), in support of their argument that the statute of limitations
 FOX V. JOHNSON

 2021-NCCOA-489

 JACKSON, J., concurring in part and dissenting in part

 began to run “from the termination of the acts which constitute[d] the abuse

 complained of.” (Citation omitted.) The plaintiff in Barnette was involuntarily

 committed to a mental institution for 76 days and subsequently brought an action for

 abuse of process against various individuals involved in her involuntary commitment.

 Id. at 426-31, 88 S.E.2d at 224-27. The defendants pleaded the three-year statute of

 limitations in defense because the process at issue was filed with the Clerk of

 Superior Court of Person County on 21 March 1950 and the plaintiff did not initiate

 the action until 26 May 1953—three years, two months, and five days after the

 process was filed. See id. at 428, 431, 88 S.E.2d at 225, 227. Our Supreme Court

 rejected the argument that the plaintiff’s claim was time-barred because it was filed

 more than three years after the date the process was filed with the Clerk of Superior

 Court, seeming to reason that the statute of limitations began to run upon the

 plaintiff’s release, or on some other day after 21 March 1950. Id. at 431, 88 S.E.2d at

 227.

¶ 94 Defendants cite our Court’s decision in Cox v. Jefferson-Pilot, 80 N.C. App. 122,

 341 S.E.2d 608 (1986), in support of their argument that the statute of limitations

 began to run on the date of Plaintiffs’ arrests. In Cox, the plaintiff was interrogated,

 arrested, and jailed for 14 days after his wife was charged with embezzling funds

 from her employer. Id. at 122, 341 S.E.2d at 609. After the charges against him were

 dismissed, the plaintiff brought an action against his wife’s employer for abuse of
 FOX V. JOHNSON

 2021-NCCOA-489

 JACKSON, J., concurring in part and dissenting in part

 process. Id. at 123, 341 S.E.2d at 609-10. Our Court held that the statute of

 limitations for the plaintiff’s claim began to run on the day the plaintiff was arrested

 and charged in connection with his wife’s embezzlement. See id. at 122-24, 341 S.E.2d

 at 609-10. Thus, while consistent with the general rule that statutes of limitation

 begin to run when the underlying cause of action accrues, our holding in Cox appears

 to conflict with our Supreme Court’s decision in Barnette.

¶ 95 I believe that the comments to the Second Restatement of Torts suggest a

 resolution of this apparent conflict. See Restatement 2d of Torts § 682 cmt. a. These

 comments state that “[t]he gravamen of the misconduct [in an action for abuse of

 process] . . . is the misuse of process, no matter how properly obtained, for any

 purpose other than that which it was designed to accomplish.” Id. That is,

 “subsequent misuse of [] process, [] properly obtained, constitutes the misconduct for

 which [] liability is imposed[.]” Id. Accordingly, I interpret our Supreme Court’s

 decision in Barnette to describe a situation where process was properly filed, but the

 process was subsequently abused, despite being filed for a proper purpose at the

 outset. The recitation of the facts that precedes the Court’s opinion in Barnette

 supports this interpretation, in my view: in the facts, it is noted that the Clerk of

 Superior Court of Person County had initially ordered the plaintiff to be involuntarily

 committed for 30 days, and subsequently ordered that she continue to be committed

 for an additional 30 days; our Supreme Court also stated, however, that the plaintiff
 FOX V. JOHNSON

 2021-NCCOA-489

 JACKSON, J., concurring in part and dissenting in part

 was not released until after being confined in the mental institution for 76 days—16

 days longer than ordered. See 242 N.C. at 428, 431, 88 S.E.2d at 225-26, 227.

¶ 96 I would therefore hold that the three-year statute of limitations for abuse of

 process begins to run at the time the cause of action accrues, which is as soon as the

 process is improperly filed or interposed, see Hewes, 74 N.C. App. at 614, 330 S.E.2d

 at 19, or when process properly filed or interposed becomes misused subsequently, as

 I believe happened in Barnette.

 F. Abuse of Process Alleged in Plaintiffs’ Complaint

¶ 97 As noted above, I believe the allegations pleaded in the fourth count of

 Plaintiffs’ complaint allege two separate claims for abuse of process: (1) for the threat

 and initiation of criminal proceedings against Plaintiffs in September 2007; and (2)

 for alleged violations of Brady v. Maryland, 373 U.S. 83 (1963), in the trial of Plaintiff

 Sanders, while Plaintiff Fox was awaiting trial. Plaintiffs alleged in the fourth count

 of their complaint in relevant part as follows:

 73. Defendants Johnson, Bellamy, Kelly and Hastings,
 acting in their official capacities as duly assigned agents of
 the City of Greensboro, and the City of Greensboro willfully
 and maliciously took actions in the use of legal process that
 were not proper in the regular prosecution of the
 proceeding by, inter alia,

 i. Using the threat of prosecution, and the
 proceeding itself, as leverage against Fox and Sanders in
 an attempt to elicit information from Fox and Sanders;
 FOX V. JOHNSON

 2021-NCCOA-489

 JACKSON, J., concurring in part and dissenting in part

 ii. Using the threat of prosecution, and the
 proceeding itself, as leverage to pressure Fox and Sanders
 out of the Greensboro Police Department; and

 iii. Failing to produce exculpatory information with
 respect to the charges against Fox and Sanders despite
 defendants’ affirmative duty to provide said information.
 Defendants were charged with an affirmative duty to
 provide said information due to:

 1. The fiduciary relationship between the
 defendants and Fox and Sanders;

 2. The defendants’ involvement in the
 initiation of the investigation of Fox and Sanders;
 and

 3. The defendants’ involvement in the
 investigation of Fox and Sanders.

¶ 98 Regarding the first claim—the actions alleged in subsections i. and ii. of

 paragraph 73 of Plaintiffs’ complaint—I would hold that the statute of limitations

 had run on 17 September 2010, three years after Plaintiffs were indicted on the

 charges in Guilford County Superior Court. Assuming the truth of the allegations in

 the complaint, as we must when reviewing a motion to dismiss, Burgin, 181 N.C. App.

 at 512, 640 S.E.2d at 428-29, I believe Plaintiffs’ cause of action for abuse of process

 stemming from the charges in September 2007 accrued on the date they were

 indicted—17 September 2007—because as I understand it, this claim is that the

 indictment itself was legal process improperly filed in Guilford County Superior

 Court with an ulterior motive. Accordingly, I would affirm the trial court’s grant of
 FOX V. JOHNSON

 2021-NCCOA-489

 JACKSON, J., concurring in part and dissenting in part

 the motion to dismiss on this claim because Plaintiffs did not initiate this action until

 January 2012, several months after the expiration of the 30-day deadline to re-file

 the claim after the federal lawsuit was dismissed without prejudice to state-law

 claims on 27 August 2011.

¶ 99 Regarding the second claim—the actions alleged in subsection iii. of paragraph

 73 of Plaintiffs’ complaint—I would hold that the allegations in the complaint fail to

 demonstrate whether or when the claim for abuse of process because of the Brady

 violation accrued. The allegations in subsection iii. of paragraph 73 do not specify

 when the alleged failure to produce exculpatory information occurred, and it appears

 that this alleged failure to produce exculpatory information could have occurred

 within the three-year statute of limitations, and it might be likely that it did. I would

 therefore vacate the trial court’s order granting the motion to dismiss in part and

 remand the case to the trial court for further proceedings on this claim.

 VI. Conclusion

¶ 100 In sum, I concur in the majority opinion in part, and dissent from it in part,

 because the allegations in the complaint allege two separate abuse of process claims,

 and I would hold that the statute of limitations has run on one, but it is impossible to

 tell whether it has on the other.